IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JEREMY AND SIMONE MOCK, husband and wife<br><br>Plaintiffs,<br><br>v.<br><br>COMMONWEALTH OF PENNSYLVANIA, JOSHUA D. SHAPIRO, individually and in his official capacity as Governor of the Commonwealth of Pennsylvania, LORI M. SHAPIRO, AND COMMONWEALTH OF PENNSYLVANIA STATE POLICE<br><br>Defendants. | No. |

## COMPLAINT

### Parties, jurisdiction, and venue

1. Plaintiffs, Jeremy and Simone Mock, are husband and wife who own and reside at a property located in Rydal, Pennsylvania (the "Mock Property").

2. Defendant, Commonwealth of Pennsylvania, is a state entity.

3. Defendant, Joshua D. Shapiro, is an adult individual who owns and resides at a property located in Jenkintown, Pennsylvania. Mr. Shapiro is also the Governor of the Commonwealth of Pennsylvania. He is sued in his official and individual capacities. At all relevant times, Governor Shapiro exercised his power by virtue of state law and made possible only because he is clothed with the authority of state law. Moreover, Governor Shaprio's conduct, as alleged herein, violates clearly

established constitutional rights of which a reasonable person, much less a lawyer and former Attorney General, knew or should have known.

4. Defendant, Lori M. Shapiro, is an adult individual who owns and resides at real property located in Jenkintown, Pennsylvania. Ms. Shapiro and Governor Shapiro are husband and wife.

5. The property which the Shapiros own and which is the subject matter of this litigation is referred to as the "Shapiro Property."

6. Defendant, Commonwealth of Pennsylvania State Police (the "State Police"), is a law enforcement agency responsible for enforcing laws in the Commonwealth of Pennsylvania. Upon information and belief, the State Police are also responsible for providing security to Governor Shapiro and Mrs. Shapiro.

7. This Court has jurisdiction pursuant to 28 U.S.C §§ 1331; 1343(1), (3), and (4); 42 U.S.C. §§ 1983 and 1985.

8. Venue is proper pursuant to 28 U.S.C. § 1391(a)(2) because a substantial portion of the events or omissions giving rise to the action occurred within this judicial district and the City is subject to personal jurisdiction in this judicial district.

## FACTS

9. The Mocks and the Shapiros are neighbors. A portion of the Mock Property and a portion of the Shapiro Property share a common boundary in the area depicted in the photograph below:



10.     In early July 2025, the Shapiros met in person with the Mocks about the construction of an eight (8) foot security fence on the Mock Property near the common boundary of the Mock Property and the Shapiro Property.

11.     After that initial meeting, on July 15, 2025, an attorney for the Shapiros emailed the Mocks stating that the Shapiros would be interested in purchasing of a portion of the Mock Property adjacent to the common boundary line for the construction of this fence. The area of the Mock Property that the Shapiros were offering to purchase from the Mocks is depicted in the shaded green area in the diagram below:

3



12. However, the parties could not come to an agreement on the purchase price for the Mock Property.

13. Therefore, the parties proposed a lease agreement whereby the Shapiros would lease the same portion of the Mock Property that the Shapiros offered to purchase.

14. For several weeks, the Mocks, through counsel, engaged a good-faith negotiation towards a lease with the Shapiros for the Mock Property.

15. However, the parties were unable to reach an agreement for a lease.

16. Then, on or about August 29, 2025, counsel for the Shapiros stated that the Shapiros would be taking "alternative actions" to obtain the portion of the Mock Property they originally offered to purchase on July 15, 2025.

17. What followed was an outrageous abuse of power by the sitting Governor of Pennsylvania and its former Attorney General.

18. To begin, the Shapiros suddenly claimed, without evidence, they owned the Mock Property through "adverse possession" despite their previous acknowledgments that the Mock Property was owned by no one other than the Mocks and despite having never been awarded the Mock Property though adverse possession by a court.

19. Indeed, for over nine years, the Mocks had paid taxes on the property that the Shapiros were suddenly claiming they owned through adverse possession and had used the Mock Property that the Shapiros were unlawfully occupying as party of a storm water management plan.

20. Then, the Shapiros started to treat the Mock Property as their own by, among other things, planting large arborvitae type trees and other plants on the Mock Property, flying a drone over the Mock Property, threatening to remove healthy trees on the Mock Property, and chasing away the Mocks' arborist and surveyor.

21. Upon information and belief, Governor Shapiro personally directed that his agents and representatives to plant the arborvitae type trees and other plants knowing that he did not own the Mock Property.

22. Worse and most egregiously, upon information and belief, Governor Shapiro personally directed the State Police to patrol the Mock Property. On multiple occasions, when the Mocks have attempted to use their property, the State Police have insisted the area was "disputed" and told them to immediately exit their property.

23. An example of the State Police patrolling and occupying the Mock Property is shown below:

5



24. To be clear, these members of the State Police are on the Mock Property. Behind the officers are the arborvitae that the Shapiros planted on the Mock Property without permission and over the Mocks' express objections.

25. In another instance, the Mocks were installing a fence along the property line with another owner. However, the Mocks were forced to pause construction of the fence at the command of the State Police because the fence contractors were approaching a "disputed area" in the "security zone." That so-called "disputed area" is and always has been the Mocks' Property.

26. Moreover, the State Police have repeatedly told the Mocks that the area is now a "security zone" that they may not enter onto without permission of the Shapiros and/or the State Police.

27. The Shapiros clearly knew the area of the Mock Property that they are occupying unlawfully is owned by the Mocks. Not only did they offer to purchase the

6

and then lease the property, a survey the Shapiros obtained from Hoover Engineering showed that the property was part of the Mock Property, the Montgomery County tax assessment map clearly indicates that the area is part of the Mock Property, and the Shapiros represented to the Abington Township Zoning Board that the so-called "security zone" that the Shapiros now claim they own by "adverse possession" was owned by none other than the Mocks.

28. The Shapiros continue to occupy the Mock Property without permission or any legal justification whatsoever.

29. The Mocks have repeatedly demanded that the Shapiros cease unlawfully occupying the Mock Property and return it to them, but the Shapiros have refused.

30. In fact, before filing this complaint, the Mocks told the Shaprios that if the Shapiros did not vacate the Mock Property that the Shapiros were unlawfully occupying, the Mocks would be forced to file this complaint. The Mocks received no response from the Shapiros.

## CAUSES OF ACTION

### COUNT I
### Violation of the Fourteenth Amendment
### Procedural Due Process

31. Plaintiffs incorporate the previous paragraphs by reference.

32. The 14th Amendment Due Process Clause provides that the government may not deprive any person of life, liberty, or property without due process of law.

33. Procedural Due Process requires the state to give notice and an opportunity to be heard.

34. The Mocks were denied procedural due process when the Shapiros and/or the State Police seized their property for a "security zone" without notice or an opportunity to be heard.

35. As a result of the defendants' actions, the Plaintiffs suffered damages.

36. Moreover, Governor Shapiro's conduct, as alleged herein, violates clearly established constitutional rights of which a reasonable person knew or should have known.

37. In particularly, Governor Shapiro as a licensed attorney and former Attorney General of the Commonwealth of Pennsylvania knew or should have known he could not seize, nor could he direct the State Police to seize, his neighbors land without notice and an opportunity to be heard.

### COUNT II
### Violation of the Fourth Amendment
### Unlawful Seizure of Property without Due Process

38. Plaintiffs incorporate the previous paragraphs by reference.

39. The Fourth Amendment of the United States provides individuals the right to be free from unreasonable seizure or destruction of property.

40. Defendants seized the Mock Property in violation of the Mocks' rights under the Fourth Amendment of the United States Constitution, made applicable to the City through the Fourteenth Amendment.

41. Defendants' seizure of the Mocks Property is an unlawful and unreasonable seizure within the Fourth Amendment as it was done without a lawful purpose and done so intentionally.

42. No adequate recourse was provided whereby the Mocks could challenge the actions of the Defendants.

43. Defendants' actions were willful and reckless and done with complete indifference to the Plaintiff's constitutional rights.

44. As a result of the Defendants' actions, the Mocks have suffered substantial damages.

45. Moreover, Governor Shapiro's conduct, as alleged herein, violates clearly established constitutional rights of which a reasonable person knew or should have known.

46. In particularly, Governor Shapiro as a licensed attorney and former Attorney General of the Commonwealth of Pennsylvania knew or should have known he could not seize, nor could he direct the State Police to seize, his neighbors land without notice and an opportunity to be heard.

## COUNT III
### Violation of the Fifth Amendment
### Taking of the Mock Property without Just Compensation

47. Plaintiffs incorporate the previous paragraphs by reference.

48. "The Takings Clause of the Fifth Amendment states that "private property [shall not] be taken for public use, without just compensation." *Knick v. Twp. of Scott, Pennsylvania*, 588 U.S. 180, 184 (2019)

9

49. "[A] property owner has a claim for a violation of the Takings Clause as soon as a government takes his property for public use without paying for it." *Id.* at 189.

50. "[N]o matter what sort of procedures the government puts in place to remedy a taking, a property owner has a Fifth Amendment entitlement to compensation as soon as the government takes his property without paying for it." *Id.* at 190.

51. Defendants took the Mocks Property for public use when they unlawfully entered on the Mocks Property to use it as a security zone.

52. Defendants took property from the Mocks and have refused to compensate them for it.

### COUNT IV
### Common Law Trespass

53. Plaintiffs incorporate the previous paragraphs by reference.

54. Defendants willfully entered onto the Mock Property without the Mocks' permission, without authority, and without a court order.

55. This illegal and intentional conduct constitutes an illegal trespass onto the Plaintiff's property.

56. Defendants' conduct was willful and reckless and without justification.

57. Defendants' conduct in trespassing on the Plaintiff's property has caused the Mocks to suffer damages.

### DEMAND FOR RELIEF

Plaintiffs respectfully request that the court:

      a.    enter a declaratory judgment that the defendants violated plaintiffs' rights under the Fourth, Fifth, and Fourteenth Amendment to the United States Constitution;

      b.    enter a permanent injunction against the Defendants prohibiting them, their representatives, or agents from continuing to occupy the Mock Property without permission;

      c.    enter a permanent injunction against the Defendants removing them from the Mock Property;

      d.    award plaintiffs nominal damages;

      e.    award plaintiffs compensatory damages against Governor Shapiro personally,

      f.    award plaintiffs compensatory damages for common law trespass,

      g.    award costs and attorneys' fees under 42 U.S.C. § 1988; and

      h.    award all other relief that the Court deems just, proper, or equitable.

                                      Respectfully submitted,

Dated: February 9, 2026            */s/ Walter S. Zimolong III*
                                        WALTER S. ZIMOLONG III, ESQUIRE
                                        wally@zimolonglaw.com
                                        MEAGHAN R. WAGNER, ESQUIRE
                                        meaghan@zimolonglaw.com
                                        Zimolong, LLC
                                        PO Box 552
                                        Villanova, PA 19085-0552
                                        Tele: 215-665-0842