UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Jeremy and Simone Mock, husband and wife,<br><br>             Plaintiffs,<br><br>        v.<br><br>Commonwealth of Pennsylvania, Joshua D. Shapiro, individually and in his official capacity as Governor of the Commonwealth of Pennsylvania, Lori M. Shapiro, and Commonwealth of Pennsylvania State Police,<br><br>             Defendants. | No. 2:26-cv-00816:HB |

**BRIEF IN SUPPORT OF AMENDED MOTION TO DISMISS FILED BY GOVERNOR JOSH SHAPIRO, IN HIS OFFICIAL CAPACITY, AND THE PENNSYLVANIA STATE POLICE**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................................ii

INTRODUCTION ............................................................................................................. 1

BACKGROUND ................................................................................................................ 2

ARGUMENT .................................................................................................................... 4

    I.    THIS COURT SHOULD ABSTAIN FROM DECIDING THIS MATTER ......................................................................................................... 4

    II.    DEFENDANTS ARE IMMUNE FROM PLAINTIFFS' CLAIMS................. 12

    III.    PLAINTIFFS LACK STANDING ...................................................... 16

    IV.    PLAINTIFFS LACK A CAUSE OF ACTION ........................................ 19

CONCLUSION ...............................................................................................................21

**TABLE OF AUTHORITIES**

Constitutional Provisions

U.S. Const. art. III, §2 ................................................................................ 16
U.S. Const. amend. IV ............................................................................... 14
U.S. Const. amend. V ..................................................................... 3, 8, 17
U.S. Const. amend. XI ....................................................................*passim*
U.S. Const. amend. XIV ...................................................... 3, 12, 14

Federal Statutes

42 U.S. Code §1983 ......................................................................*passim*

Pennsylvania Statutes

42 Pa.C.S. §5530 ..................................................................................... 15

Cases

*Allied Nut and Bolt, Inc. v. NSS Industries, Inc.*,
    920 F.Supp. 626 (E.D. Pa., 1996) ........................................... 4, 7, 9

*Belfi v. USAA Federal Savings Bank*,
    No. 22-2083 (E.D. Pa., 2022) 22 WL 4097325 (September 7, 2022) ................. 6

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................... 3

*Colorado River Water and Conservation District v. United States*,
    424 U.S. 800 (1976) ............................................................ 5, 6, 7

*Dec v. Pennsylvania*,
    No. 23-2765, 2024 WL 3338301 (3d Cir. July 9, 2024) ................................. 13

*Downey v. Pa. Dep't of Corr.*,
    968 F.3d 299 (3d Cir. 2020) ...................................................... 12

*Edelman v. Jordan*,
    415 U.S. 651 (1974) .................................................................. 13

*Fowler v. UPMC Shadyside*,
    578 F.3d 203, 210-11 (3d Cir. 2009) ........................................... 3

*Frempong v. Nat'l City Bank of Indiana*,

452 F. App'x 167 (3d Cir. 2011) ...................................................................... 17

*Gordon v. East Goshen Twp.*,
592 F. Supp.2d 828, 843 (E.D. Pa., 2009) ...................................................... 5, 8

*Karns v. Shanahan*,
879 F.3d 504 (3d Cir. 2018) ........................................................................... 12

*Knick v. Twp. of Scott, Pennsylvania*,
588 U.S. 180 (2019) .................................................................................. 14, 15

*Lavia v. Pa. Dep't of Corr.*,
224 F.3d 190 (3d Cir. 2000) ........................................................................... 12

*Leer Elec., Inc. v. Pennsylvania, Dep't of Lab. & Indus.*,
597 F. Supp. 2d 470 (M.D. Pa. 2009) ............................................................. 20

*MCI Telecomm. Corp. v. Bell Atl. Pa.*,
271 F.3d 491 (3d Cir. 2001) ........................................................................... 13

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983) .............................................................................................. 8

*Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc.*,
571 F.3d 299 (3rd Cir. 2009) ............................................................................ 6

*Newark Cab Ass'n v. City of Newark*,
901 F.3d 146 (3d Cir., 2018) ............................................................................ 7

*Nigro v. Pa. Higher Educ. Assistance Agency*,
No. 19-2000, 2020 WL 5369980 (M.D. Pa.  2020) ........................................... 4

*Odd v. Malone*,
538 F.3d 202 (3d Cir. 2008) ............................................................................. 3

*Peet v. Bd. Of Supervisors of New Hanover Twp.*,
2021 WL 5040358 (E.D. Pa., Oct. 29, 2021; No. 21-2696) ......................*passim*

*Pennhurst State Sch. & Hosp. v. Halderman*,
465 U.S. 89 (1984)  ........................................................................... 13, 15, 20

*Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.*,
506 U.S. 139 (1993) ........................................................................................ 12

*Robinson v. Pennsylvania Dep't of Corr.*,
851 Fed. Appx. 289 (3d Cir. 2021) ...................................................... 13

*R.R. Comm'n of Tex. v. Pullman Co.*,
312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941) .................................. 9, 10, 12

*Ryan v. Johnson*,
115 F.3d 193 (3d Cir. 1997) ............................................................... 9

*Santos v. Philadephia*,
No. 13-cv-3130, 2013 WL 3829622 (E.D. Pa. July 24, 2013) ......................... 13

*Seminole Tribe of Florida v. Florida*,
517 U.S. 44 (1996) ........................................................................ 13. 14

*Showalter v. Brubaker*,
283 F. App'x 33, 35 (3d Cir. 2008) ...................................................... 19

*Spector Motor Serv. v. McLaughlin*,
323 U.S. 101 (1944) ....................................................................... 10

*Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*,
535 U.S. 302 (2002) ....................................................................... 14

*Trump for President, Inc. v. Boockvar*,
481 F.Supp.3d 476 (W.D. Pa. 2020) .................................................... 9

*Will v. Mich. Dep't of State Police*,
491 U.S. 58 (1989) ........................................................................ 12

*Yaw v. Delaware River Basin Comm'n*,
49 F.4th 302, 310 (3d Cir. 2022) ....................................................... 16

<u>Federal Rules of Civil Procedure</u>

Fed. R. Civ. P. 12(b)(1) ................................................................. 21
Fed. R. Civ. P. 12(b)(6) ................................................................. 3, 21

## INTRODUCTION

Approximately eight years ago, Plaintiffs purchased and began to occupy a property that abuts property owned by Governor Josh and First Lady Lori Shapiro. In April 2025, after the Governor's official Residence in Harrisburg, Pennsylvania, was firebombed by an arsonist while the Governor and his family were inside, defendant Pennsylvania State Police (PSP) undertook construction on the Shapiro's personal real estate to enhance the security of the Governor and his family, who were no longer able to occupy the fire-damaged official residence.

During that construction process, the parties became aware of an alleged discrepancy in the physical property boundary between Plaintiffs' and the Shapiros' lots. Specifically, the parties learned of a potential discrepancy in title to a portion of land that the Shapiros had used as and considered to be part of the their yard since they purchased the property 23 years ago. Instead of addressing this rather common type of dispute in state court, Plaintiffs have inexplicably attempted to convert this state law title and boundary matter into a quite literal "federal case." Plaintiffs attempt to summon the jurisdiction of this Court based merely upon the fact that their neighbor is a publicly elected official who is protected by the PSP.

Plaintiffs' claims fail as a matter of law, but this Court need not and should not address the merits of the complaint at all, because several threshold issues require dismissal.

*First*, this Court should abstain from exercising jurisdiction over this state-law dispute. In fact, a "quiet title" action to determine ownership of the disputed land is ongoing in the Court of Common Pleas of Montgomery County. Even the threshold

issue of standing cannot be addressed unless Plaintiffs establish ownership of the disputed land under Pennsylvania law. The Montgomery County case is ultimately determinative of Plaintiffs' alleged ownership of the disputed property, without which this case cannot proceed.

*Second*, both the Governor and PSP are immune from this action. In particular, the Defendants are immune under the 11th Amendment of the United States Constitution, official immunity and sovereign immunity.

*Third*, Plaintiffs lack standing.

*Fourth*, Plaintiffs lack a cause of action.

For all these reasons, Plaintiffs' complaint should be dismissed.

## BACKGROUND

### *Plaintiffs' Complaint*.

While the parties and court must analyze the moving Defendants' motion as though the facts alleged in Plaintiffs' complaint are true, this posture does not require the Court to accept a non-plausible legal theory. While the movants dispute Plaintiffs' allegations, they are restated here for the Courts' convenience.

In sum, Plaintiffs Jeremy and Simone Mock allege they own residential property in Rydal, Pennsylvania. They sue the moving defendants, Governor Josh Shapiro in his official capacity, and the Pennsylvania State Police. The complaint's implicit theory is that these defendants used the Governor's office and PSP security presence to take over a portion of the Mocks' land next to the Shapiro property and turn it into a "security zone," without lawful process and without compensation. They

2

did no such thing, and instead acted at all times consistent with the Shapiros' right over the property in question.

Plaintiffs commenced this action in federal court against both the Shapiros individually and against the moving defendants. On the same day, and consistent with their long-exercised property rights, the Shapiros commenced an action in state court against Plaintiffs to quiet title to the subject property. *See* Exhibit A (complaint filed in Montgomery County Court of Common Pleas at No. 2026-02445).

The complaint pleads four counts against the Governor in his official capacity and against the Pennsylvania State Police: Fourteenth Amendment Due Process, Fourteenth Amendment Unlawful Seizure, Fifth Amendment Taking, and Common Law Trespass.

**STANDARD OF REVIEW**

In ruling on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court must "accept as true the factual allegations in the complaint and draw all reasonable inferences in favor of [the plaintiff]," but "need not accept bald assertions or inferences drawn by the plaintiff if they are unsupported by the facts set forth in the complaint." *Odd v. Malone*, 538 F.3d 202, 207 (3d Cir. 2008). *See also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57, 570 (2007) (rejecting the "no set of facts" standard"); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (finding that a complaint must do more than allege the plaintiff's entitlement to relief but rather 'show' such an entitlement via its facts.). The Court need not accept legal

conclusions or inferences drawn by a plaintiff if unsupported by the facts set forth in the complaint. *Twombly*, 550 U.S. at 555-56.

The Court must consider whether the Complaint states a claim for relief that is plausible on its face. *Nigro v. Pa. Higher Educ. Assistance Agency*, No. 19-2000, 2020 WL 5369980, at *4-5 (M.D. Pa. Sept. 8, 2020).

## ARGUMENT

First, this Court should abstain from deciding Plaintiffs' claims that present a state law dispute in the context of a wholly avoidable federal question.

Second, the Complaint should be dismissed as against PSP and the Governor in his official capacity as both parties are immune from suit.

Third, this Court should dismiss the Complaint because Plaintiffs lack standing. Plaintiffs' standing is precisely conditioned on their ownership of the disputed property – an issue that is currently being litigated in state court. Without establishing legal and equitable ownership of the property, plaintiffs cannot show a legally cognizable injury.

Finally, while the Court need not—and should not—go beyond these failures, the complaint may also be dismissed because Plaintiffs have no plausible cause of action.

## I.     This Court Should Abstain from Deciding this Matter

### a.  Colorado River Abstention

Where "wise judicial administration," and "conservation of judicial resources and comprehensive disposition of litigation" so indicate, a federal court may decline to exercise their jurisdiction.  *Allied Nut and Bolt, Inc. v. NSS Industries, Inc.*, 920

4

F.Supp. 626 (E.D. Pa., 1996) (quoting, *Colorado River Water and Conservation District v. United States*, 424 U.S. 800, 818-19 (1976) This is precisely such a case.

The threshold question under *Colorado River* is whether a federal proceeding is "truly parallel" to a state proceeding – that is, whether they involve the same parties and claims. Where "two actions arise from the same transactions and occurrence, involve the same parties, entail consideration of the same factual and legal issues, and seek essentially the same relief, there is a sufficient risk that judicial resources will be consumed needlessly to warrant" analyzing the matter under *Colorado River. Id.* at 631.

Here, the two actions unquestionably arise from the same transaction or occurrence – the dispute over property at the interception of the Shapiros' and Mocks' lots, and the Shapiros' exercise of control over that property. Similarly, excepting PSP, the same parties are involved in each case – that is, the Shapiros and Mocks. And with regard to PSP, this Circuit "has never required complete identity of parties for abstention." *Gordon v. East Goshen Twp.*, 592 F. Supp.2d 828, 843 (E.D. Pa., 2009) (quoting, *IFC Interconsult AG v. Safeguard Int'l Partners, LLC*, 438 F.3d 298, 306 (3rd. Cir. 2006).

Third, the threshold legal issues are the same – whether the Shapiros own and were legally authorized to exercise control over the disputed property. On this point, Plaintiffs' claims are wholly dependent upon resolution of the state-law quiet title action. *See, Peet v. Bd. Of Supervisors of New Hanover Twp.*, 2021 WL 5040358 at *3 (E.D. Pa., Oct. 29, 2021; No. 21-2696) (citing *Timony v. Upper Merion Twp.*, 66 F.

App'x 403 (3rd Cir. 2003) (concluding that federal civil rights claims regarding property were parallel to state inverse condemnation claim). Lastly, the relief requested is essentially the same – that is, a determination regarding ownership of the disputed property, and alleged damages relating to such ownership or the absence thereof. *Id.* (citing *Clar v. Lacy*, 376 F.3d 682, 687 (7th Cir. 2004) (parallel actions are those that rely on the same factual predicate to raise similar legal issues against similar parties).

Proceeding to the six-factor *Colorado River* analysis, then, the first question is whether the state court has exercised jurisdiction over property, by virtue of an *in rem* or quasi *in rem* action. *See, Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc.*, 571 F.3d 299, 308 (3rd Cir. 2009). Here, the parties are presently litigating an *in rem* action pending in the Court of Common Pleas of Montgomery County, Pennsylvania.

Specifically, on the same day that this matter was filed, the Shapiros commenced a quiet title action in the Montgomery County Court of Common Pleas at Docket No. 2026-02445 (attached as Exh. A). Such actions are "uniquely tied to the property" and are thus *in rem* or *quasi in rem* actions under Pennsylvania Law. *See, Belfi v. USAA Federal Savings Bank*, No. 22-2083 (E.D. Pa., 2022) 22 WL 4097325 at *9 (September 7, 2022) (quoting *Peet v. Bd. Of Supervisors of New Hanover Twp.*, No. 21-cv-2696 2021 WL 5040358, at *4 (E.D. Pa. Oct. 29, 2021) and citing *In re Kovalchick*, No. 06-cv-1066, 2006 WL 2707428 at *2 (M.D. Pa. Sept. 19, 2006). As

6

such, the Pennsylvania Courts have already exercised jurisdiction over the subject property, and the first factor therefore weighs heavily in favor of abstention.

The second factor, inconvenience of the federal forum, also weighs in favor of abstention. *See, Allied Nut and Bolt, Inc.* at 631. Here, the parties' essential claims are wholly dependent upon resolution of the question of legal and equitable title under state law principles. Such principles are more conveniently addressed by state courts that routinely engage in analysis of these issues. As such, it is less convenient for this Court and the parties to engage in such an analysis in this federal forum.

Third, the desirability of avoiding piecemeal litigation weighs heavily in favor of abstention. As discussed, *supra.*, Plaintiffs' federal complaint is expressly contingent upon their ownership of the disputed parcel. If they do not have the right to that parcel under Pennsylvania law, this complaint necessarily fails. *See, Newark Cab Ass'n v. City of Newark*, 901 F.3d 146, 151 (3d Cir., 2018)(quoted in *Peet* at *6) ("To succeed on a takings claim, the plaintiff must first show that a legally cognizable property interest is affected by the Government's action in question."). Here, nothing precludes Plaintiffs from raising their constitutional claims or state law trespass claim in the Pennsylvania case. In contrast, if this case were dismissed or stayed under *Colorado River*, "two lawsuits would then become one," and piecemeal litigation would be avoided. *Allied Nut and Bolt* at 631.

With respect to the next factor -- which court assumed jurisdiction first – both actions were filed within hours of each other. As such, on its face this factor is non-determinative. However, given that this matter necessarily relies upon the

determination of state law issues, it can be said that the state law case is a necessary predicate to Plaintiffs' standing here. As such, the state case is further along the path to eventual resolution of the dispute, and this factor weighs in favor of abstention. *See, Gordon*, at 828.

The fifth factor, the source of the law that will provide the rules of decision similarly weighs in favor of abstention. While both fora are capable of addressing both the state and federal claims, the primary and predicate question to be addressed is one of state law. Indeed, this Court cannot ascertain the viability of *any* of Plaintiffs' claims without making determining, under Pennsylvania law, which party actually owns the parcel in dispute. In contrast, if the Shapiros prevail in the state court action, that Court will avoid the need of addressing any of the federal claims.

At the risk of placing too fine a point on this concept, if the Shapiros properly occupied the property under state law, no taking occurred, nothing was "seized" and no one "trespassed." All these issues can and should be more efficiently disposed of in the state court action, and this factor thus guides this Court toward abstention. *See*, *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1 (1983); *See*, *also*, *Peet* at \*6 ("[t]hough the pleadings frame this case as a taking claim under the fifth Amendment of the U.S. Constitution, it is clear from the record in the parallel proceedings that the underlying state law determinations will likely be dispositive of the federal claim.").

Next, the sixth factor is the adequacy of the state court proceeding to protect the parties' rights. Plaintiffs here have not pled any claims that cannot and should

not be raised in state court. To the contrary, Plaintiffs' claims may all be adequately heard in state court, which is more appropriately equipped to address the threshold state law issue. *See, Ryan v. Johnson*, 115 F.3d 193, 200 (3d Cir. 1997) (when State Court may adequately address claims, the sixth factor will not upset the balance of the remaining factors).

Finally, overarching the above analysis is the question of whether judicial resources would be appropriately dedicated to this matter as pled in federal, as opposed to state court. On this point, "the courts' interest in conserving judicial resources is strong, and the present case is one which this court has no special mandate to hear… ." *Allied Nut and Bolt, Inc.* at 632 n.8. As such, the great weight of authority, and the exceptional nature of this case, merit abstention, and Plaintiffs' complaint should be dismissed or stayed until the underlying state case is resolved or adjudicated.

### b. Pullman Abstention

"Under the abstention doctrine set forth in *R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), federal courts decline to decide federal constitutional claims if (1) doing so requires interpretation of "unsettled questions of state law,"; (2) permitting resolution of the unsettled state-law questions by state courts would "obviate the need for, or substantially narrow the scope of adjudication of the constitutional claims"; and (3) an "erroneous construction of state law would be disruptive of important states policies[.]" *Trump for President, Inc. v.*

*Boockvar*, 481 F.Supp.3d 476 (W.D. Pa. 2020), (quoting *Chez Sez III Corp. v. Township of Union*, 945 F.2d 628, 631 (3d Cir. 1991)).

"If there is one doctrine more deeply rooted than any other in the process of constitutional adjudication, it is that [courts] ought not to pass on questions of constitutionality … unless such adjudication is unavoidable" and "federal courts do not decide questions of constitutionality on the basis of preliminary guesses regarding local law." *Spector Motor Serv. v. McLaughlin*, 323 U.S. 101, 105 (1944) (citing *Railroad Comm. v. Pullman Co.*, supra; *City of Chicago v. Fieldcrest Dairies*, 316 U.S. 168; *In re Central R. Co. of New Jersey*, 136 F.2d 633; (3d Cir.); *Burford v. Sun Oil Co.*, 319 U.S. 315; *Meredith v. Winter Haven*, 320 U.S. 228, 235; *Green v. Phillips Petroleum Co.*, 119 F.2d 466 (8th Cir.); *Findley v. Odland*, 127 F.2d 948 (6th Cir.); *United States v. 150.29 Acres of Land*, 135 F.2d 878 (7th Cir.) (cleaned up)).

Here, Plaintiffs ask this Court to decide a factual and legal dispute that has not yet been settled under state law – that is, who owns the disputed property. Rather than bringing this question to the state courts to resolve, Plaintiffs invoke this Court's federal question jurisdiction. They do so apparently because the current resident of the disputed land is the Commonwealth's chief executive; and they do so despite the fact that Josh and Lori Shapiro, individually, rather than any state agency, is occupying the land. Plaintiffs' attempt to bootstrap this local question into a federal civil rights case should be rejected, and this Court should abstain from deciding the asserted constitutional claims under *Pullman*.

10

Further, an erroneous construction of state law would be particularly disruptive here. As has been widely reported, the Governor and his family were attacked while asleep in the official Governor's residence, and the residence was significantly damaged by the arson set by their attacker. As a result, and as alluded to in the instant Complaint, PSP, with the Governor's consent, instituted myriad security enhancements at the Governor's personal home, many of which are impacted by the use and ownership of the disputed property. An erroneous interpretation of the relevant state law would upset not simply the use and ownership of this tract, but PSP's ability to continue to protect the Governor and his family from physical harm. Given the exigent circumstances following the firebombing and the immediate threat to the Governor's safety, PSP acted expeditiously to protect the Governor and his family from physical harm.

Further, as discussed, *supra.*, Plaintiffs' claims all rest upon their assertion that they hold legal title to the disputed property under Pennsylvania law. While Plaintiffs try to make it appear that the Defendants utilized PSP to dispossess and misappropriate a portion of their property, that attempt cannot overcome the fact that the disputed area has always been exclusively occupied and maintained by the Shapiros, who own that property as a matter of state law. If plaintiffs do not have a state law right to occupy the disputed property, there simply is no constitutional question to resolve. As such, Plaintiff's constitutional claims are wholly avoidable. Rather than entertaining these nascent and contingent constitutional issues and risk

an erroneous result that could jeopardize the first family's safety, this Court can and should defer exercising its jurisdiction under *Pullman* and its progeny.

## II.    Defendants are Immune from Plaintiffs' Claims

It has been long established that the Eleventh Amendment of the United States Constitution bars all private lawsuits against non-consenting states in federal court. *Karns v. Shanahan*, 879 F.3d 504, 512 (3d Cir. 2018) (citing *Hans v. Louisiana*, 134 U.S. 1 (1890)). Eleventh Amendment immunity "is designed to preserve the delicate and 'proper balance between the supremacy of federal law and the separate sovereignty of the States.'" *Id.* (quoting *Alden v. Maine*, 527 U.S. 706, 757 (1999)). This immunity bars suits against the states and state agencies "regardless of the relief sought." *Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993). A claim against a state government official, in his or her official capacity, is "no different from a suit against the State itself" because it "is not a suit against the official but rather is a suit against the official's office." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

A plaintiff can overcome Eleventh Amendment immunity in three ways. First, a state may consent to be sued. *Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 310 (3d Cir. 2020). Pennsylvania, however, has generally withheld its consent to be sued. *Lavia v. Pa. Dep't of Corr.*, 224 F.3d 190, 195 (3d Cir. 2000) (citing 42 Pa. C.S. § 8521(b)). Second, Congress can, as part of the statute enabling a particular cause of action in certain circumstances, abrogate the states' immunity pursuant to Section 5 of the Fourteenth Amendment. *Downey*, 968 F.3d at 310. However, Section 1983— the vehicle through which all of Plaintiffs' federal claims here are brought—does not

abrogate state officials' Eleventh Amendment immunity, because "states and state officials sued in official capacities are not 'persons' capable of being sued for civil rights violations under § 1983." *Robinson v. Pennsylvania Dep't of Corr.*, 851 Fed. Appx. 289, 291 (3d Cir. 2021) (citing *Will*, 491 U.S. at 71). Third, under the *Ex parte Young* doctrine, a plaintiff can pursue certain kinds of forward-looking injunctive relief against state officials, notwithstanding Eleventh Amendment immunity, to stop a current violation of federal law. *Will*, 491 U.S. at 71 n.10.

Here, as a threshold matter, this Court lacks jurisdiction over Section 1983 claims against PSP. PSP is a state agency which cannot be sued in federal court under Section 1983. *Dec v. Pennsylvania*, No. 23-2765, 2024 WL 3338301, at *1 (3d Cir. July 9, 2024); *see also Santos v. Philadelphia,* No. 13-cv-3130, 2013 WL 3829622, at *1 (E.D. Pa. July 24, 2013) (Bartle, J.) (summarily dismissing Section 1983 claim against PSP).

As to the claim against Governor Shapiro in his official capacity, Plaintiffs' claims here fall outside the "narrow" *Ex parte Young* doctrine exception to the Governor's Eleventh Amendment immunity. *See Seminole Tribe*, 517 U.S. at 76. A claim under the *Ex parte Young* exception allows only prospective declaratory or injunctive relief addressing an ongoing violation of federal law. *MCI Telecomm. Corp. v. Bell Atl. Pa.*, 271 F.3d 491, 506 (3d Cir. 2001). It does not apply to suits for retroactive relief, *Edelman v. Jordan*, 415 U.S. 651, 678 (1974), suits based in state law, *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984), or "where

Congress has prescribed a detailed remedial scheme for the enforcement against a State" of the claimed federal right, *Seminole Tribe*, 517 U.S. at 74.

Here, Plaintiffs' claims cannot fit into the *Ex parte Young* exception because the Complaint does not seek forward-looking relief to address a current and ongoing violation of any Plaintiffs' constitutional rights. Rather, Count I of the Complaint asserts an antecedent violation of procedural due process. *See*, P. Complaint at ¶34 ("The Mocks were denied procedural due process when the Shapiros and or the State Police seized their property for a "security zone" without notice or an opportunity to be heard.").

Similarly, Count II alleges a previous "unlawful seizure" of property. *See*, P. Compl. at ¶40. ("Defendants seized the Mock Property in violation of the Mocks' rights under the Fourth Amendment of the United States Constitution, made applicable to the City (*sic.*) through the Fourteenth Amendment."). Likewise, Count III seeks "just compensation" for an alleged taking, again asserting only backward-looking harms. *See*, P. Compl. at ¶51. ("Defendants took the Mocks Property for public use when they unlawfully entered on the Mocks Property to use it as a security zone.").[1] Finally, Count IV alleges no constitutional violation, but instead assert a trespass claim under Pennsylvania common law.

---

[1] On this point, the takings clause itself provides no avenue for prospective *injunctive* relief. Rather, it simply requires that just compensation, i.e., monetary relief, be provided. *See*, *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 321 (2002). And, while the Supreme Court *Knick v. Twp. of Scott, Pennsylvania*, 588 U.S. 180 (2019) held that state remedies need not be exhausted before bringing a section 1983 claim, they were equally clear that a plaintiff's ultimate remedy is compensation, rather than ejectment of the

And while Plaintiffs' prayer for relief asks, in small part, for injunctive relief, such relief does not remedy the alleged Constitutional harms, and is thus unattainable. Rather, Plaintiffs seek relief essentially in the nature of a state law remedy of "ejectment," and ask this Court to preclude the Shapiros from occupying the disputed property despite a state-law determination of ownership.[2] Put differently, Plaintiffs seek injunctive relief against Governor Shapiro in his *personal* capacity, not his *official* capacity as Governor—they do not want the Governor to direct PSP to cease an official act, but rather they want a private property owner to stop occupying property they claim to be theirs. Such requested relief addresses state law rights, though, and does nothing to remedy the purported ongoing constitutional violations.

As to such relief, our Supreme Court has held that the "need to reconcile competing interests is wholly absent, however, when a plaintiff alleges that a state official has violated state law." *Pennhurst*, 465 U.S. at 106. As to compelling official compliance with *state* law (here, state property law), "[a] federal court's grant of relief against state officials on the basis of state law, whether prospective or retroactive, does not vindicate the supreme authority of federal law." *Id.*

---

"taking" governmental entity. *Knick* at 198-199 (prior cases addressed fact that "availability of subsequent compensation meant that such an equitable [injunctive] remedy was not available." (citing, *Regional Rail Reorganization Act Cases*, 419 U.S. 102, 107 (1974) (cleaned up)).

[2] Relevantly, Pennsylvania Law places a 21-year statute of limitation on ejectment actions, such that they may not be commenced once a possessor has adversely possessed a property for 21 years. 42 Pa.C.S. § 5530. Plaintiffs' apparent inability to bring an ejectment action, given the Shapiros' longstanding possession of the disputed property, does not overcome the Defendants' immunity.

Here, Plaintiffs seek to vindicate their purported state law right to possession of their neighbor's property. The mere fact that Plaintiffs' neighbor is the Governor of the Commonwealth does not provide them with federal relief. On the contrary, the 11th Amendment directly precludes Plaintiffs from relying on federal courts to impose the relief they request. Indeed, "it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law." *Id.* Because Plaintiffs ask this Court to impose such a state law remedy, Defendants are immune from Plaintiffs' claims.[3]

## III. Plaintiffs Lack Standing

The U.S. Constitution confines a federal court's jurisdiction to "Cases" and "Controversies." U.S. Const. art. III, § 2. This limit is enforced by requiring that a plaintiff establish standing, which in turn requires them to demonstrate that they suffered (1) an injury in fact, (2) caused by the conduct complained of, and that is (3) capable of judicial remedy. *Yaw v. Delaware River Basin Comm'n*, 49 F.4th 302, 310 (3d Cir. 2022).

The Complaint makes abundantly clear that the claimed injury here is that the Defendants have interfered with their use or possession of the disputed property. As to this issue, *Peet*, *supra.,* is instructive, and fatal to Plaintiffs' purported standing.

---

[3] No such detailed analysis is required as to defendant PSP, as Plaintiffs have failed to name any official or other "person" that might give rise to a viable claim under 42 U.S.C. 1983. Instead, Plaintiffs bring this claim against the Commonwealth agency directly, as to which no exception to sovereign immunity might apply.

In *Peet*, the plaintiffs commenced actions against a local municipality in the Pennsylvania Court of Common Pleas of Montgomery County. *See*, *Peet v. Bd. of Supervisors of New Hanover Twp.*, No. CV 21-2696, 2021 WL 5040358, at \*2 (E.D. Pa. Oct. 29, 2021). They first sought a Petition for Preliminary Injunction and Complaint to Quiet Title, both claiming that the government had improperly exercised control over property in which Plaintiffs alleged an interest. *Id.* The *Peet* plaintiffs then filed an action in this Court seeking compensation from the municipality alleging a taking of that same property in violation of the Fifth Amendment of the U.S. Constitution. *Id.*

While deciding to abstain from the matter, the federal court observed that "the core premise of the takings claim—that the Plaintiffs hold the property rights to the road at issue … must be determined before any judgment on the takings claim could be rendered." *Peet* at \*3 (citing, *Newark Cab Ass'n v. City of Newark*, 901 F.3d 146, 151 (3d Cir. 2018) ("To succeed on a takings claim, the plaintiff must first show that a legally cognizable property interest is affected by the Government's action in question.")).

On this point, this Circuit has made clear that a party asserting a takings claim cannot demonstrate an "injury in fact" without establishing clear ownership of the "taken" property. In *Frempong v. Nat'l City Bank of Indiana*, 452 F. App'x 167, 171 (3d Cir. 2011), the Third Circuit held that an plaintiff's alleged equitable interest in real estate was insufficient to vest him with standing to assert a civil rights claim. Specifically, the Court agreed that the plaintiff there "suffered no "injury-in–fact"

17

because he had no legally protected interest in the property with respect to third parties" and that his "his "status" (as to the equitable interest) has legal effect only as between" the plaintiff and the title holder of record. *Id.*

Similarly here, Plaintiffs' "status" as to the disputed property has legal effect only as between the two claimants – that is, the Mocks and the Shapiros, *not* the "Governor of Pennsylvania" or PSP. The fact that Plaintiffs claims a disputed parcel of land that shares a border between their uncontested property and the Shapiros' uncontested property does not establish that Plaintiffs have suffered an injury in fact at the hands of the Commonwealth agencies.

Nor does it establish that any of Plaintiffs' alleged harms are redressable by this Court. To the contrary, Plaintiffs cannot get the relief that they seek through this Court's intervention.[4] Indeed, there exists no diversity of jurisdiction that would allow this court to independently decide the Pennsylvania title issue. Rather, resolution of that issue is redressable only in the Pennsylvania Court of Common Pleas. Because Plaintiffs cannot establish an injury in fact, nor are the complained-of injuries redressable by this Court, Plaintiffs lack standing, and this complaint should be dismissed.

---

[4] There exists no diversity of jurisdiction that would allow this court to independently decide the Pennsylvania title issue.

## IV. Plaintiffs Lack a Cause of Action

Next, Plaintiffs have failed to state a claim for relief. It is beyond cavil that to state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law.'" *Showalter v. Brubaker*, 283 F. App'x 33, 35 (3d Cir. 2008) (quoting *Harvey v. Plains Twp. Police Dep't*, 421 F.3d 185, 189 (3d Cir.2005) (itself quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)).

While state officials might be state actors under section 1983, their identity as officials is, standing alone, insufficient to convert private disputes to actions "under color of state law." *Id.* Here, while plaintiffs make allegations that PSP, allegedly at the direction of the Governor, "patrolled" the disputed parcel, Plaintiffs have made no allegation that they had previously occupied, used or enjoyed the disputed area (save passing reference to a "stormwater management plan" that they do not allege has been impaired).

Instead, this complaint merely presents a private dispute between two parties, the Mocks and the Shapiros, who have owned their parcels for approximately eight and twenty-three years, respectively. That the Shapiros allowed PSP to access the disputed parcel in a manner similar to that which the Shapiros access that parcel does not magically convert this private dispute to "state action." [5]

---

[5]A private party becomes a state actor only if the complaint plausibly alleges willful joint participation with the State. Mere benefit from police/security activity, mere acquiescence, or

Furthermore, to the extent that Plaintiffs assert that Defendants' actions are inconsistent with Pennsylvania property law, they likewise have no federal cause of action, and their claims would be barred by the Eleventh Amendment to the United States Constitution. *See, Leer Elec., Inc. v. Pennsylvania, Dep't of Lab. & Indus.*, 597 F. Supp. 2d 470, 477 (M.D. Pa. 2009) ("[I]f the Court were to instruct the Pennsylvania officials on how to conform their conduct to Pennsylvania law, it would engage in a practice that 'conflicts directly with the principles of federalism that underlie the Eleventh Amendment.'" (quoting *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984)).

Similarly, Plaintiffs' complaint fails to sufficiently allege that state officials have "deprived" them of any right. As discussed above, Plaintiffs' allegations regarding their use of the disputed parcel are limited to 1) an allegation that they have paid taxes on the property; and 2) an allegation that they used the property for a "stormwater management plan." Defendants' actions have deprived them of neither of these uses. They do not plead any facts to establish that they are unable to rely on a "stormwater management plan," and they certainly do not contend that they may no longer pay taxes on the parcel.

---

mere overlap between a private dispute and state security measures is not enough. *Elizabeth Harvey Appellant v. Plains Township Police Department; Edward J. Walsh; Ronald Dombroski; Plains Township Board; Joan A. Chukinas*, 421 F.3d 185 (3d Cir. 2005)

While they may now wish to enjoy or use the parcel in a manner in which they had not done so previously, they have failed to allege any existing use of which they have been denied. Rather, their complaint is wholly devoid of any assertion that they were even aware of a purported ownership interest at any time before July 2025. As discussed in Part III, *supra.*, Plaintiffs cannot complain that they have been "deprived" of a right that they do not hold. Because Plaintiffs have not pled facts sufficient to establish that they were deprived of a right, or that such deprivation was accomplished under color of state law, they fail to state a claim. For these reasons, Plaintiffs' Complaint should be dismissed.

## CONCLUSION

Because Plaintiffs lack standing, the Complaint should be dismissed under Rule 12(b)(1) or 12(b)(6). Further, this Complaint should be dismissed under Rule 12(b)(6) because Plaintiffs lack a right to relief and have failed to state a claim. Otherwise, the Complaint should be dismissed or stayed under Rule 12(b)(6) because this Court should abstain from exercising jurisdiction.

DATE: April 13, 2026

Respectfully submitted,

Jennifer C. Selber
General Counsel
30 N. Third St., STE 201
Harrisburg, PA 17101

/s/ *Thomas P. Howell*

Thomas P. Howell (Bar No. 79527)
Deputy General Counsel
30 N. Third St., STE 201
Harrisburg, PA 17101
(717) 772-4252
thowell@pa.gov

*Counsel for Governor Joshua D. Shapiro,
in his official capacity, and for the
Pennsylvania State Police*

# CERTIFICATES

I hereby certify that a copy of this brief has been served on all counsel of record using the Court's CM/ECF system.

April 13, 2026

/s/ *Thomas P. Howell*

Thomas P. Howell (Bar No. 79527)
Deputy General Counsel
30 North Third Street, Suite 200
Harrisburg, PA 17101
(717) 772-4252
thowell@pa.gov

EXHIBIT A

# IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA

JOSHUA D SHAPIRO

vs.

JEREMY MOCK

NO. 2026-02445

## <u>NOTICE TO DEFEND – CIVIL</u>

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.

IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

LAWYER REFERENCE SERVICE
MONTGOMERY BAR ASSOCIATION
100 West Airy Street (REAR)
NORRISTOWN, PA

19404-0268 (610) 279-9660, EXTENSION 201

PRIF0034
R 10/11

Case# 2026-02445-0 Docketed at Montgomery County Prothonotary on 02/09/2026 12:22 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

# IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA

JOSHUA D SHAPIRO

vs.

JEREMY MOCK

NO. 2026-02445

## CIVIL COVER SHEET

State Rule 205.5 requires this form be attached to any document <u>commencing an action</u> in the Montgomery County Court of Common Pleas. The information provided herein is used solely as an aid in tracking cases in the court system. This form does not supplement or replace the filing and service of pleadings or other papers as required by law or rules of court.

Name of Plaintiff/Appellant's Attorney: WALTER WEIR JR, ESQ., ID: 23137

Self-Represented (Pro Se) Litigant ☐

**Class Action Suit** ☐ Yes ☒ No

**MDJ Appeal** ☐ Yes ☒ No       **Money Damages Requested** ☐

**Commencement of Action:**       **Amount in Controversy:**

Complaint

## Case Type and Code

Real Property:

Quiet Title

**Other:**

Case# 2026-02445-0 Docketed at Montgomery County Prothonotary on 02/09/2026 12:22 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

# Supreme Court of Pennsylvania

## Court of Common Pleas
## Civil Cover Sheet

MONTGOMERY _____ County

| For Prothonotary Use Only: | |
|---|---|
| Docket No: | TIME STAMP |

*The information collected on this form is used solely for court administration purposes. This form does not supplement or replace the filing and service of pleadings or other papers as required by law or rules of court.*

Case# 2026-02445-0 Docketed at Montgomery County Prothonotary on 02/09/2026 12:22 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**SECTION A**

**Commencement of Action:**
- ☒ Complaint
- ☐ Writ of Summons
- ☐ Transfer from Another Jurisdiction
- ☐ Petition
- ☐ Declaration of Taking

Lead Plaintiff's Name:
Joshua D. and Lori M. Shapiro

Lead Defendant's Name:
Jeremy and Simone Mock

**Are money damages requested?** ☐ Yes ☒ No

Dollar Amount Requested:
(check one)
- ☐ within arbitration limits
- ☒ outside arbitration limits

**Is this a *Class Action Suit*?** ☐ Yes ☒ No

**Is this an *MDJ Appeal*?** ☐ Yes ☒ No

Name of Plaintiff/Appellant's Attorney: Walter Weir, Jr., Esquire

☐ **Check here if you have no attorney (are a Self-Represented [Pro Se] Litigant)**

**SECTION B**

**Nature of the Case:** Place an "X" to the left of the **ONE** case category that most accurately describes your **PRIMARY CASE.** If you are making more than one type of claim, check the one that you consider most important.

**TORT** *(do not include Mass Tort)*
- ☐ Intentional
- ☐ Malicious Prosecution
- ☐ Motor Vehicle
- ☐ Nuisance
- ☐ Premises Liability
- ☐ Product Liability *(does not include mass tort)*
- ☐ Slander/Libel/ Defamation
- ☐ Other: _____

**MASS TORT**
- ☐ Asbestos
- ☐ Tobacco
- ☐ Toxic Tort - DES
- ☐ Toxic Tort - Implant
- ☐ Toxic Waste
- ☐ Other: _____

**PROFESSIONAL LIABLITY**
- ☐ Dental
- ☐ Legal
- ☐ Medical
- ☐ Other Professional: _____

**CONTRACT** *(do not include Judgments)*
- ☐ Buyer Plaintiff
- ☐ Debt Collection: Credit Card
- ☐ Debt Collection: Other _____
- ☐ Employment Dispute: Discrimination
- ☐ Employment Dispute: Other _____
- ☐ Other: _____

**REAL PROPERTY**
- ☐ Ejectment
- ☐ Eminent Domain/Condemnation
- ☐ Ground Rent
- ☐ Landlord/Tenant Dispute
- ☐ Mortgage Foreclosure: Residential
- ☐ Mortgage Foreclosure: Commercial
- ☐ Partition
- ☒ Quiet Title
- ☐ Other: _____

**CIVIL APPEALS**
Administrative Agencies
- ☐ Board of Assessment
- ☐ Board of Elections
- ☐ Dept. of Transportation
- ☐ Statutory Appeal: Other _____
- ☐ Zoning Board
- ☐ Other: _____

**MISCELLANEOUS**
- ☐ Common Law/Statutory Arbitration
- ☐ Declaratory Judgment
- ☐ Mandamus
- ☐ Non-Domestic Relations Restraining Order
- ☐ Quo Warranto
- ☐ Replevin
- ☐ Other: _____

*Updated 1/1/2011*

Case# 2026-02445-0 Docketed at Montgomery County Prothonotary on 02/09/2026 12:22 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

WEIR LLP
By:     Walter Weir, Jr., Esquire
          Susan A. Weir, Esquire
Attorney Id. Nos. 23137/323808
Fifth Floor, The Widener Building
1339 Chestnut Street
Philadelphia, PA 19107
(215) 665-8181 Office
(215) 665-8464 Fax
wweir@weirlawllp.com
sweir@weirlawllp.com

*Attorneys for Plaintiffs*
*Joshua D. and Lori M. Shapiro*

| | |
|---|---|
| JOSHUA D. AND LORI M. SHAPIRO : <br> 1550 Cloverly Lane : <br> Abington, PA 19046, : <br> : <br> Plaintiffs, : <br> : <br> v. : <br> : <br> JEREMY AND SIMONE MOCK : <br> 1533 Cherry Lane : <br> Rydal, PA 19046, : <br> : <br> Defendants. : <br> : | COURT OF COMMON PLEAS <br> MONTGOMERY COUNTY <br><br> Civil Action <br><br> No. _____ |

## NOTICE TO DEFEND

| NOTICE | AVISO |
|---|---|
| You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the Prothonotary of the Court of Common Pleas of Montgomery County your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you. | Le han demandado a ustted en la corte. Si usted quiere defenderse de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) dias de plazo al partir de la fecha de la demanda y la notificacion. Hace falta a sentar una comparencia escrita o en persona o con un abogado y entregara la cortte en forma escrita sus defensas o sus objeciones a las d mandas en contra de su persona. Sea a visado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion. Ademas, la corte puede decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta de manda. Usted puede perder dinero o sus propiedades o otros de rechos importantes para usted. |

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.

IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

LAWYER REFERENCE SERVICE
MONTGOMERY COUNTY BAR ASSOCIATION
100 West Airy Street (Rear)
Norristown, PA 19401
Phone (610) 279-9660, Ext. 201

LLEVE ESTA DEMANDA A UN ABOGADO IN MEDIATAMENTE SI NO TIENE ABOGADO OO SI NO TIENE EL DINEROSUFICIENTE DE PAGAR TAL SERVICIO, VAYA EN PERSONA O LLAME POR TELEFONO A LA OFICINA CUY DIRECCION SE ENCUENTRA ESCRITA ABAJO PARA AVERICUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL.

SERVICIO DE REFERENCIA DE ABOGADOS
COLEGIO DE ABOGADOS DEL CONDADO DE MONTGOMERY
100 West Airy Street (parte trasera)
Norristown, PA 19401
Teléfono (610) 279-9660, Ext. 201

Case# 2026-02445-0 Docketed at Montgomery County Prothonotary on 02/09/2026 12:22 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case# 2026-02445-0 Docketed at Montgomery County Prothonotary on 02/09/2026 12:22 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

WEIR LLP
By:    Walter Weir, Jr., Esquire
       Susan A. Weir, Esquire
Attorney Id. Nos. 23137/323808
Suite 500, The Widener Building
1339 Chestnut Street
Philadelphia, PA 19107
(215) 665-8181 Office
(215) 665-8464 Fax
wweir@weirlawllp.com
sweir@weirlawllp.com

*Attorneys for Plaintiffs*
*Joshua D. and Lori M. Shapiro*

| | |
|---|---|
| JOSHUA D. AND LORI M. SHAPIRO<br>1550 Cloverly Lane<br>Abington, PA 19046, <br><br>             Plaintiffs,<br><br>   v.<br><br>JEREMY AND SIMONE MOCK<br>1533 Cherry Lane<br>Rydal, PA 19046,<br><br>             Defendants. | COURT OF COMMON PLEAS<br>MONTGOMERY COUNTY<br><br>Civil Action<br><br>No. _____ |

## COMPLAINT IN EQUITY

Plaintiffs Joshua D. and Lori M. Shapiro, by and through their undersigned counsel, bring this Complaint in Equity against Defendants Jeremy and Simone Mock, and in support thereof aver:

1.     Plaintiffs Joshua D. Shapiro and Lori M. Shapiro are adult individuals who acquired property located at 1550 Cloverly Lane, Abington, Montgomery County, Pennsylvania on May 22, 2003, and have continuously maintained possession of their property since that date. The deed with a metes and bounds description of their property is attached hereto as Exhibit A and is referred to in this Complaint as the "Plaintiffs' Property".

1

Case# 2026-02445-0 Docketed at Montgomery County Prothonotary on 02/09/2026 12:22 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

2.     Plaintiff Joshua D. Shapiro is the duly elected Governor of the Commonwealth of Pennsylvania and maintains an additional residence at the Governor's Residence in Harrisburg, Pennsylvania for official duties, while continuing to maintain his primary residence and domicile at 1550 Cloverly Lane, Abington, Pennsylvania.

3.     Defendants Jeremy and Simone Mock acquired title to the real property located at 1533 Cherry Lane, Rydal, Montgomery County, Pennsylvania, on April 24, 2017, and have resided at this address since that date. The deed with a metes and bounds description of their property is attached hereto as Exhibit B and is referred to in this Complaint as the "Defendants' Property".

4.     A fence was erected prior to May 22, 2003, and a tree line has existed separating the Plaintiffs' Property and the Defendants' Property along a common boundary line. This fence and tree line were in place at the time the Plaintiffs took title to and possession of their property on May 22, 2003, and has continuously remained in place to this day (which is referred to herein as the "Fence Line") as illustrated in red on the plot plan attached hereto as Exhibit C.

5.     From May 22, 2003, through the summer of 2025, Plaintiffs recognized and treated the Fence Line as the actual boundary line between their property and Defendants' Property and have exercised exclusive and continuous dominion and control over all the land on their side of the Fence Line.

6.     From April 24, 2017, through the summer of 2025, Defendants recognized and treated the Fence Line as the actual boundary line between their property and Plaintiffs' Property.

7.     Defendants have never possessed or occupied any part of the land on Plaintiffs' side of the Fence Line.

8.     Since his election as Governor of Pennsylvania, the Pennsylvania State Police have maintained a security detail at the Plaintiffs' Property.

2

Case# 2026-02445-0 Docketed at Montgomery County Prothonotary on 02/09/2026 12:22 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

9. On or about April 13, 2025, an intruder broke into the Governor's Residence in Harrisburg, Pennsylvania, set the home on fire and attempted to assassinate and commit criminal acts that endangered Plaintiff Joshua Shapiro and his family.

10. Following this incident, the Pennsylvania State Police conducted a review of the security in place at the Governor's Residence in Harrisburg and at his home in Abington and made recommendations to improve security at both locations.

11. As a result of these recommendations, the Commonwealth began plans to install additional security measures at their home at 1550 Cloverly Lane, Abington, Pennsylvania, including a fence around the Plaintiffs' Property.

12. As part of this process, Plaintiffs' Property was surveyed by a licensed professional land surveyor in the summer of 2025, at which time it was discovered that approximately 2,900 square feet of land which Plaintiffs have exclusively possessed and occupied since May 22, 2003, believing it to be their property, fell outside the metes and bounds description contained in Plaintiffs' deed and within the metes and bounds description contained in Defendants' deed (which area is referred to herein as the "Disputed Area").

13. The boundary and location of the Disputed Area is outlined on Exhibit C by a green line.

14. Because the Fence Line did not fall within the metes and bounds description of the Plaintiffs' Property as per their deed, they were unable to get a permit to build a new fence along the existing Fence Line.

15. Upon learning this, Plaintiffs reached out to Defendants and advised them of this discovery. At that time Defendants acknowledged to Plaintiffs that they had always believed that the Disputed Area was part of Plaintiffs' Property. Prior to learning of this discovery, Defendants

3

never claimed, possessed or exercised any rights over the Disputed Area.

16.     Plaintiffs then proceeded to engage with Defendants in an effort to resolve the issue so Plaintiffs could obtain a permit to build a fence along, *inter* alia, the exiting Fence Line.  Among other things, Plaintiffs suggested transferring legal title to the Disputed Area to Plaintiffs in exchange for which they would compensate Defendants for doing so.

17.     Thereafter, Defendants retained legal counsel and proposed leasing the Disputed Area to Plaintiffs. In doing so, Defendants demanded, *inter alia*, that Plaintiffs erect a fence along a part of Defendants' Property that was not contiguous to Plaintiffs' Property and would run along a boundary line between Defendants' Property and one of Defendants' neighbors.

18.     As negotiations progressed, Defendants demanded that Plaintiffs pay all of the legal fees they incurred with their lawyer for an amount in excess of $25,000, and that Plaintiffs pay for the removal of several trees, including a large Tulip Poplar tree that was dying and presenting a hazard to both property owners, located in the Disputed Area.

19.     After protracted negotiations, Plaintiffs and Defendants were unable to reach a lease agreement that would have resolved the problem that was preventing Plaintiffs from obtaining a permit to build a new fence along the existing Fence Line.

20.     After negotiations broke down, Plaintiffs made alternative security arrangements along the Fence Line and abandoned their effort to have a new fence erected along the Fence Line.

21.     In September of 2025, Defendants' counsel notified Plaintiffs' counsel that Defendants owned the Disputed Area and demanded that Plaintiffs surrender possession of the Disputed Area to Defendants, which demand Plaintiffs rejected.

22.     At the same time, Plaintiffs notified Defendants' counsel in writing that they would not permit Defendants, or anyone acting on their behalf, to have access to the Disputed Area, as

Case# 2026-02445-0 Docketed at Montgomery County Prothonotary on 02/09/2026 12:22 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case# 2026-02445-0 Docketed at Montgomery County Prothonotary on 02/09/2026 12:22 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

they have been in exclusive, continuous, open, notorious, hostile, and actual possession of the Disputed Area for the statutory period of twenty-one (21) years required under Pennsylvania law and thereby acquired title to and the exclusive right to use, possess and occupy the Disputed Area by operation of law through adverse possession pursuant to 42 Pa.C.S. §5530.

23. An arborist was hired to take down the Tulip Poplar tree in the Disputed Area and Defendants' counsel was notified accordingly by Plaintiff's counsel. In response, Defendants counsel objected to Plaintiffs removing this tree.

24. At or about the same time, but unknown to Plaintiffs, Defendants applied to Abington Township for a permit to erect a fence that would, if built, include the Disputed Area within Defendants' property and dispossess Plaintiffs from the Disputed Area which Plaintiffs have exclusively possessed and occupied for over twenty-two years.

25. On or about October 12, 2025, after having been notified that Defendants and their contractors would not be permitted to access the Disputed Area, Defendants directed their surveyor to enter the Disputed Area without Plaintiffs' permission. Upon attempting to enter the Disputed Area, Defendants' surveyor was refused access by the Plaintiffs' security detail.

26. Early Monday morning, October 20, 2025, Defendants' arborist appeared unannounced on Defendants' property and attempted to access the Disputed Area to remove the large Tulip-Poplar tree located within that area.

27. Plaintiffs denied Defendants' arborist access to the Disputed Area.

28. On or about Monday, October 20, 2025, Defendants' contractor began erecting a new fence around Defendants' Property. As construction progressed and was about to reach the Fence Line, Defendants' contractor and Defendant Jeremy Mock announced their intention to construct the fence in a manner that would encompass all the Disputed Area and dispossess

5

Plaintiffs of the Disputed Area which Plaintiffs have exclusively occupied since May 22, 2003.

29. Plaintiffs have denied and continue to deny Defendants and their agents access to the Disputed Area.

30. Defendants have and continue to make self-help attempts to harass Plaintiffs with the intent take possession of the Disputed Area notwithstanding Plaintiffs' ongoing exclusive occupation and possession of the Disputed Area since May 22, 2003.

31. On or about October 21, 2025, Defendants or their agent, without permission entered the Disputed Area and installed a provocative sign bearing Defendants' claim that they owned the Disputed Area.

32. At or about the same time, Defendants or their agent, without permission entered the Disputed Area and posted a sign on the Tulip Poplar tree which declared that Defendants owned the Disputed Area.

33. At or about this time, Defendants attempted to enlist the Abington Township police to obtain possession of the Disputed Area and, on information and belief, for the purpose of having the Plaintiffs charged with criminal trespass.

34. Defendants' self-help efforts ignore the fact that Plaintiffs have been in open, exclusive, hostile, continuous, adverse, and actual possession under a claim of right to the Disputed Area since May 22, 2003, satisfying the statutory period required under 42 Pa.C.S. §5530.

35. Since May 22, 2003, Plaintiffs have continually maintained and improved the Disputed Area by mowing the lawn, planting trees and bushes, maintaining erosion controls, clearing leaves and other debris, installing an electric dog fence, and have otherwise been in open, exclusive, hostile, continuous, adverse possession under a claim of right to the Disputed Area during that entire period.

Case# 2026-02445-0 Docketed at Montgomery County Prothonotary on 02/09/2026 12:22 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

36. At all times relevant to the matters set forth herein, Defendants have had actual knowledge of Plaintiffs' occupation and possession of the Disputed Area and never voiced any objection to Plaintiffs' possession thereof until October 2025.

37. Defendants have never occupied or had possession of the Disputed Area.

38. Plaintiffs believe and therefore aver that the prior owners of Plaintiffs' property were in actual, open, notorious, exclusive, hostile, continuous and adverse possession of the Disputed Area for an unknown period prior to Plaintiffs' acquisition of their property on May 22, 2003.

39. Defendants and their predecessors in interest have never objected and have acquiesced to the boundary line established by the Fence Line and Defendants only objected after Plaintiffs brought this to Defendants' attention in October of 2025.

40. Defendants for the first time now claim ownership of the Disputed Area and are interfering with Plaintiffs' quiet enjoyment of the Disputed Area.

41. At all times relevant to the matters set forth herein, Defendants have been represented by counsel and have known, or should have known, that their efforts to use self-help to obtain possession of the Disputed Area were unlawful.

42. Instead of seeking to quiet title to the Disputed Area by commencing an action in this court, the Defendants filed a lawsuit in the United States District Court alleging civil rights violations.

<u>COUNT I – QUIET TITLE AND INJUNCTIVE RELIEF</u>

43. Plaintiffs incorporate paragraphs 1 through 42 as though set forth at length herein.

44. By operation of law, Plaintiffs are the owners of the Disputed Area.

45. Defendants have no right of access to or right to occupy or otherwise possess the Disputed Area.

7

46. Defendants' ongoing harassment of Plaintiffs and their invitees is unlawful, constitutes a private nuisance under Pennsylvania common law, interferes with Plaintiffs' use and enjoyment of their property, and poses an ongoing security threat to Plaintiffs and their children.

47. Defendants' ongoing harassment of Plaintiffs and their invitees is causing Plaintiffs immediate and irreparable harm, including but not limited to emotional distress, interference with the peaceful use and enjoyment of their property, diminution in property value, and ongoing threats to the safety and security of Plaintiffs and their family members.

48. Plaintiffs have no adequate remedy at law because monetary damages cannot adequately compensate for the ongoing trespass, harassment, and threats to personal safety. The harm involves unique real property interests and personal safety concerns that are inherently difficult to quantify. Plaintiffs will suffer irreparable harm absent injunctive relief, including continued interference with their property rights, ongoing threats to their safety and that of their family members, the inability to peacefully enjoy their property, and the risk of multiplicity of suits if Plaintiffs are forced to repeatedly seek damages for each instance of trespass or harassment.

49. Plaintiffs are entitled to temporary, preliminary and permanent injunctive relief enjoining Defendants, their agents, employees, contractors, successors, assigns, and all persons acting in concert with them or on their behalf, from: (a) harassing, threatening, or intimidating Plaintiffs, their family members and invitees; (b) entering upon or attempting to access the Disputed Area; and (c) interfering with Plaintiffs' peaceful use and enjoyment of the Disputed Area.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court:

A. Enter a declaratory judgment quieting title to the Disputed Area in favor of Plaintiffs and against Defendants;

Case# 2026-02445-0 Docketed at Montgomery County Prothonotary on 02/09/2026 12:22 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

B.      Enter a preliminary and permanent injunction prohibiting Defendants, their agents, contractors, employees, successors, assigns, and all persons acting in concert with them from entering upon, occupying, or otherwise interfering with Plaintiffs' possession and use of the Disputed Area;

C.      Order Defendants, and their agents, contractors, employees, successors, assigns, and all persons acting in concert with them, not to harass, threaten or intimidate Plaintiffs, their family members or invitees, and not to direct, authorize, or permit their contractors, agents or representatives to access or attempt to gain access to the Disputed Area;

D.      Award Plaintiffs their costs and expenses incurred in prosecuting this action, and reasonable attorneys' fees to the extent authorized by law or equity; and

E.      Grant such other and further relief as this Court deems just and proper.

## COUNT II – QUIET TITLE

50.     Plaintiffs incorporate by reference paragraphs 1 through 49 as though fully set forth at length herein.

51.     Plaintiffs are the owners of the Disputed Area as a matter of law by adverse possession, having maintained actual, continuous, exclusive, visible, notorious, distinct, and hostile possession under claim of right for the statutory period of twenty-one (21) years required under 42 Pa.C.S. §5530 (relating to twenty-one-year limitation). Specifically, Plaintiffs' possession began on or about May 22, 2003, and has continued uninterrupted through the present date, exceeding the statutory period of twenty-one years as of May 22, 2024. During this period, Plaintiffs and their predecessors in title have maintained, improved, and exercised dominion over the Disputed Area by mowing, landscaping, installing improvements, and excluding others.

52.     Plaintiffs are the owners of the Disputed Area as a matter of law under the

Case# 2026-02445-0 Docketed at Montgomery County Prothonotary on 02/09/2026 12:22 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

consentable boundary doctrine, as both parties have treated the fence line as the boundary between their properties for more than twenty-one (21) years, there was uncertainty as to the true boundary line, and the parties agreed as a matter of law to accept the fence line as the boundary to resolve that uncertainty.

53. Plaintiffs are the owners of the Disputed Area as a matter of law under the boundary by acquiescence doctrine, as the parties have mutually recognized and acquiesced in the fence line as the boundary between their properties for the statutory period of twenty-one (21) years.

54. Alternatively, if Plaintiffs do not hold title to the Disputed Area, Plaintiffs hold a prescriptive easement over the Disputed Area, having used the area in an open, notorious, adverse, continuous, and uninterrupted manner under claim of right for the statutory period of twenty-one (21) years pursuant to 42 Pa.C.S. §5530.

WHEREFORE, Plaintiffs demand judgment in their favor and against Defendants:

A. Finding that Plaintiffs are the legal and equitable owners of the Disputed Area;

B. Determining that Defendants do not have any right, title, interest or estate in the Disputed Area;

C. Establishing that the boundary lines of Plaintiffs' real property are as depicted in the plat of survey attached to this pleading as Exhibit C;

D. Quieting title to the Disputed Area in Plaintiffs' favor and against Defendants; and

E. Awarding Plaintiffs their costs and, to the extent permitted by law or equity, attorney's fees, and such other and further relief as the Court considers just, fair, and equitable.

10

Case# 2026-02445-0 Docketed at Montgomery County Prothonotary on 02/09/2026 12:22 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case# 2026-02445-0 Docketed at Montgomery County Prothonotary on 02/09/2026 12:22 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Submitted by:

WEIR LLP

By: _____

Walter Weir, Jr., Esquire
Susan A. Weir, Esquire

*Attorneys for Plaintiffs*

Dated:  February 9, 2026.

11

<u>VERIFICATION</u>

I, Joshua D. Shapiro, am a named Plaintiff in the above-captioned action, and hereby verify that the facts set forth in the foregoing Complaint are true and correct to the best of my knowledge, information and belief. I understand that the statements made herein are made subject to the penalties of 18 Pa.C.S. §4904, relating to unsworn falsification to authorities.

*Josh Shapiro*
Josh Shapiro (Feb 9, 2026 11:39:04 EST)

_____
Joshua D. Shapiro

Dated: February 9, 2026.

Case# 2026-02445-0 Docketed at Montgomery County Prothonotary on 02/09/2026 12:22 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case# 2026-02445-0 Docketed at Montgomery County Prothonotary on 02/09/2026 12:22 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

<u>VERIFICATION</u>

I, Lori M. Shapiro, am a named Plaintiff in the above-captioned action, and hereby verify that the facts set forth in the foregoing Complaint are true and correct to the best of my knowledge, information and belief. I understand that the statements made herein are made subject to the penalties of 18 Pa.C.S. §4904, relating to unsworn falsification to authorities.

Lori M. Shapiro (Feb 9, 2026 11:39:07 EST)

_____
Lori M. Shapiro

Dated: February 9, 2026.