IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| JEREMY AND SIMONE MOCK, husband and wife | : : : : | No.  2:26-cv-00816-HB |
| Plaintiffs, | : : | |
| v. | : : | |
| COMMONWEALTH OF PENNSYL-VANIA, JOSHUA D. SHAPIRO, individually and in his official capacity as Governor of the Commonwealth of Pennsylvania, LORI M. SHAPIRO, in her individual capacity, and LIEU-TENANT COLONEL GEORGE L. BIVENS, in his official capacity as Acting Commission of the Pennsylvania State Police | : : : : : : : : : : | |
| Defendants. | : : : | |

AMENDED COMPLAINT

PARTIES, JURISDICTION, AND VENUE

1.      Plaintiffs, Jeremy and Simone Mock, are husband and wife who own and reside at a property located in Rydal, Pennsylvania (the "Mock Property").

2.      Defendant, Joshua D. Shapiro, is an adult individual who owns and resides at a property located in Jenkintown, Pennsylvania. Mr. Shapiro is also the Governor of the Commonwealth of Pennsylvania. He is sued in his official and individual capacities. At all relevant times, Governor Shapiro exercised his power by virtue of state law and made possible only because he is clothed with the authority of state

law. Moreover, Governor Shaprio's conduct, as alleged herein, violates clearly established constitutional rights of which a reasonable person, much less a lawyer and former Attorney General, knew or should have known.

3.  Defendant, Lori M. Shapiro, is an adult individual who owns and resides at real property located in Jenkintown, Pennsylvania. Ms. Shapiro and Governor Shapiro are husband and wife. Ms. Shapiro is sued only in her individual capacity and not as a state actor.

4.  Governor and Mrs. Shapiro own property located in Abington Township, Pennsylvania (the "Shapiro Property").

5.  Defendant, Lieutenant Colonel George Bivens ("Lt. Col. Bivens") is the acting commission of the Commonwealth of Pennsylvania State Police (the "State Police"), which is a law enforcement agency responsible for enforcing laws in the Commonwealth of Pennsylvania. Upon information and belief, the State Police are also responsible for providing security to Governor Shapiro and Mrs. Shapiro. Furthermore, upon information and belief, Lt. Col. Bivens maintains final decision-making authority for the customs, practices, and policies of the State Police. Lt. Col. Bivens is sued in his official capacity.

6.  This Court has jurisdiction pursuant to 28 U.S.C §§ 1331; 1343(1), (3), and (4); 42 U.S.C. §§ 1983 and 1985.

7.  Venue is proper pursuant to 28 U.S.C. § 1391(a)(2) because a substantial portion of the events or omissions giving rise to the action occurred within this judicial district and the City is subject to personal jurisdiction in this judicial district.

2

## FACTS

8.    The Mocks and the Shapiros are neighbors. A portion of the Mock Property and a portion of the Shapiro Property share a common boundary in the area encircled and depicted in the photograph below:



9.    On about July 1, 2025, Governor Shapiro called Simone Mock and asked to meet the Mocks to discuss security upgrades to the Shapiro Property, including the construction of a security fence.

10.    That same day Governor Shapiro left a voicemail for Jeremy Mock about "needing to install a fence" and with a question concerning his "property line."

3

11.     A few hours later, Jeremy Mock met with Mrs. Shapiro in person and Mrs. Shapiro told Mr. Mock that the Shapiros needed to construct an eight (8) foot high security fence on a portion of the Mock Property (shown circled in the image above) near the common boundary of the Mock Property and the Shapiro Property and that the Shapiros needed the Mocks' permission to construct that security fence.

12.     Also present at this meeting was Michael Seabright, an engineer for the Shapiros, who asked Mr. Mock to provide him with any surveys or drawings he had of the Mock Property, including any drawings showing the Mocks' stormwater management systems.

13.     After that initial meeting, on July 14, 2025, the Shapiros attorney, Susan Weir, Esquire ("Attorney Weir")", who represents the Shapiros in this litigation, called Mr. Mock and left him a voicemail concerning the Shapiros desire to purchase that portion of the Mock Property where the proposed fence would be built.

14.      The next day, July 15, 2025, Attorney Weir, emailed the Mocks stating that the Shapiros would be interested in purchasing of a portion of the Mock Property where proposed fence would be built. The portion of the Mock Property that the Shapiros were offering to purchase from the Mocks is depicted in the shaded green area in the diagram below:



15.     To be clear, the Mocks own this shaded area and its clearly reflected in the metes and bounds description of the deed for the Mock Property (the "Mock Deed"). A copy of the Mock Deed is attached at **Exhibit "1,"** (ECF 26-1) and incorporated by reference.

16.     However, the Shapiros would not agree to the Mocks' asking price for the portion of Mock Property shown in the shaded area above.

17.     After the Shapiros rejected the Mocks asking price, for several weeks, the Mocks, through counsel, engaged a good-faith negotiation towards a lease with the Shapiros for the portion of the Mock Property the Shapiros previously indicated they wanted to purchase.

18.     However, the parties were unable to reach an agreement for a lease.

19. Then, on or about August 29, 2025, counsel for the Shapiros stated that the Shapiros would be taking "alternative actions" to obtain the portion of the Mock Property they originally offered to purchase.

20. What followed was an outrageous abuse of power by the sitting Governor of Pennsylvania and its former Attorney General.

21. To begin, the Shapiros suddenly claimed, without evidence, they owned the portion of the Mock Property shaded in the image the above paragraph 14, through "adverse possession" despite their repeated admissions that the same portion of the Mock Property was owned by no one other than the Mocks and despite having never been awarded the Mock Property though adverse possession by a court.

22. For starters, in her July 15, 2025 email to the Mocks, Attorney Weir requested "a convenient time to speak with you regarding 'the potential purchase of a portion of **your property** located at 1533 Cherry Lane." *See* copy of the 7/15/25 from Attorney Weir to the Mocks attached at **Exhibit "2"** (ECF 26-2) (emphasis added).

23. Then, later on July 15, 2025, Attorney Weir appeared before the Abington Township Zoning Hearing Board and testified that the Shapiros would be submitting a zoning variance application for the proposed security fence on the Mock Property because the fence would be constructed "on property that is not owned by the [Shapiros]." She further represented to the Abington Township Zoning Hearing Board that the Shapiros were in "active communication with [the Mocks] to negotiate the purchase of a portion of [the Mock Property.]" Notes of Testimony, Abington

6

Township Zoning Hearing Board, July 15, 2025, at 15:13-24.  A copy of the Notes of Testimony is attached at **Exhibit "3,"** (ECF 26-3) and incorporated by reference.

24.     Then, on or about July 25, 2025, Attorney Weir sent the Mocks, through counsel, a term sheet proposing the terms of the Shapiros purchase of a portion of the Mock Property. The term sheet the Shapiros prepared indicated that the Mocks are the "Seller" and states, among other things, that the Mocks are "the sole legal and equitable owner of the Property, with full right, title and authority to covey it." A copy of the term sheet is attached at **Exhibit "4"** (ECF 26-4).

25.     Then, in August 2025, Attorney Weir sent the Mocks a proposed lease drafted by the Shapiros, which stated that the Mocks owned the portion of the Mock Property that the Shapiros wished to lease. A copy of proposed lease from the Shapiros is attached at **Exhibit "5"** (ECF 26-5).

26.     Next, on or about August 15, 2025, Attorney Weir signed and submitted an application to the Abington Township Zoning Hearing Board that listed the Mocks as the owners of the land where the proposed fence would be built. Moreover, Attorney Weir represented to the Zoning Board that the Mocks had given the Shapiros "permission … to file this application" and that "[the Mocks and the Shapiros] were currently negotiating an agreement that will grant [the Shapiros] an interest in [the Mock Property] where the proposed fence is to be erected." A copy of August 15, 2025, Zoning Board application is attached at **Exhibit "6,"** (ECF 26-6) and incorporated by reference.

27.     Moreover, in his state court litigation the Shapiros filed against the Mocks *after this litigation* was commenced, Governor Shapiro has admitted under penalty of law that the area of the Mock Property that is at issue appears within the metes and bounds description of the Mock Deed and does not appear in the deed for the Shapiro Property. See Complaint, *Shapiro v. Mock*, Montgomery County CCP., No. 2026-02445, ¶ 12, at **Exhibit "7"** (ECF 26-7).

28.     Still further, for over nine years, the Mocks had paid taxes on the property that the Shapiros were suddenly claiming they owned through adverse possession.

29.     The Mocks further asserted ownership of the portion Mock Property that the Shapiros are unlawfully occupying when they applied for a pool and stormwater management permit in 2024. The Shapiros never objected to the permit.

30.     Nonetheless, despite admitting the Mocks owned the portion of the Mock Property at issue, the Shapiros, using the power of the state, treated the Mock Property as their own by, among other things, planting large arborvitae type trees and other plants on the Mock Property, flying a drone over the Mock Property, threatening to remove healthy trees on the Mock Property, and chasing away the Mocks' arborist and surveyor with the State Police.

31.     Upon information and belief, Governor Shapiro personally directed that his agents and representatives to plant the arborvitae type trees and other plants knowing that he did not own the Mock Property.

32.    Worse and most egregiously, upon information and belief, Governor Shapiro personally directed the State Police to patrol the Mock Property. On multiple occasions, when the Mocks have attempted to use their property, the State Police have insisted the area was "disputed" and told them to immediately exit their property.

33.    An example of the State Police patrolling and occupying the Mock Property is shown below:



34.    To be clear, these members of the State Police are on the Mock Property. Behind the officers are the arborvitae that the Shapiros planted on the Mock Property without permission and over the Mocks' express objections.

35.    In another instance, the Mocks were installing a fence along the property line with another owner. However, the Mocks were forced to pause construction of the fence at the command of the State Police because the fence contractors were

approaching a "disputed area" in the "security zone." That so-called "disputed area" is and always has been the Mocks' Property.

36.     Moreover, the State Police have repeatedly told the Mocks that the area is now a "security zone" that they may not enter onto without permission of the Shapiros and/or the State Police.

37.     The Shapiros clearly knew the area of the Mock Property that they are occupying unlawfully is owned by the Mocks. Not only did they offer to purchase the and then lease the property, a survey the Shapiros obtained from Hoover Engineering showed that the property was part of the Mock Property, the Montgomery County tax assessment map clearly indicates that the area is part of the Mock Property, and the Shapiros represented to the Abington Township Zoning Board that the so-called "security zone" that the Shapiros now claim they own by "adverse possession" was owned by none other than the Mocks.

38.     The Shapiros continue to occupy the Mock Property without permission or any legal justification whatsoever.

39.     The Mocks have repeatedly demanded that the Shapiros cease unlawfully occupying the Mock Property and return it to them, but the Shapiros have refused.

40.     In fact, before filing this complaint, the Mocks told the Shapiros that if the Shapiros did not vacate the Mock Property that the Shapiros were unlawfully occupying, the Mocks would be forced to file this complaint. The Mocks received no response from the Shapiros.

10

## CAUSES OF ACTION

### COUNT I
### Violation of the Fourteenth Amendment
### Procedural Due Process

41.    Plaintiffs incorporate the previous paragraphs by reference.

42.    The 14th Amendment Due Process Clause provides that the government may not deprive any person of life, liberty, or property without due process of law.

43.    Procedural Due Process requires the state to give notice and an opportunity to be heard.

44.    The Mocks are being denied procedural due process by Governor Shapiro and /or the Lt. Col. Bivens because they have seized the Mock Property for a "security zone" without notice or an opportunity to be heard.

45.    As a result of the defendants' actions, the plaintiffs suffered damages.

46.    Moreover, Governor Shapiro's conduct, as alleged herein, violates clearly established constitutional rights of which a reasonable person knew or should have known.

47.    In particularly, Governor Shapiro as a licensed attorney and former Attorney General of the Commonwealth of Pennsylvania knew or should have known he could not seize, nor could he direct the State Police to seize, his neighbors land without notice and an opportunity to be heard.

48.    At all times, Governor Shapiro represented that acquisition of the portion of the Mocks Property at issue was needed for security reasons and to install a

11

security fence for the Governor and his family and as part of security measures recommended by the State Police.

49.    Moreover, upon information and belief, the Governor and/or the State Police have submitted the invoices for the cost incurred for the enhanced security measures, including invoices for his counsel to negotiate a proposed purchase and then lease with the Mocks, to the Commonwealth of Pennsylvania for payment. *Taxpayers Won't Pay $1M in Security Upgrades for Gov. Shapiro's Home, Pennsylvania Treasurer Says*, CBS News (Apr. 23, 2026, 4:22 PM), https://www.cbsnews.com/philadelphia/news/stacy-garrity-josh-shapiro-pennsylvania-home-security-upgrades/

## COUNT II
### Violation of the Fourth Amendment
### Unlawful Seizure of Property without Due Process

50.    Plaintiffs incorporate the previous paragraphs by reference.

51.    The Fourth Amendment of the United States provides individuals the right to be free from unreasonable seizure or destruction of property.

52.    Governor Shapiro and/or Lt. Col. Bivens seized a portion of the Mock Property in violation of the Mocks' rights under the Fourth Amendment of the United States Constitution, made applicable to the City through the Fourteenth Amendment.

53.    Governor Shapiro's and/or Lt. Col. Bivens' seizure of a portion of the Mocks Property is an unlawful and unreasonable seizure within the Fourth Amendment as it was done without a lawful purpose and done so intentionally.

54. No adequate recourse was provided whereby the Mocks could challenge the actions of the Defendants.

55. Defendants' actions were willful and reckless and done with complete indifference to the Plaintiff's constitutional rights.

56. As a result of the Defendants' actions, the Mocks have suffered substantial damages.

57. Moreover, Governor Shapiro's conduct, as alleged herein, violates clearly established constitutional rights of which a reasonable person knew or should have known.

58. In particularly, Governor Shapiro as a licensed attorney and former Attorney General of the Commonwealth of Pennsylvania knew or should have known he could not seize, nor could he direct the State Police to seize, his neighbors land without notice and an opportunity to be heard.

**COUNT III**
**Violation of the Fifth Amendment**
**Taking of the Mock Property without Just Compensation**

59. Plaintiffs incorporate the previous paragraphs by reference.

60. "The Takings Clause of the Fifth Amendment states that "private property [shall not] be taken for public use, without just compensation." *Knick v. Twp. of Scott, Pennsylvania*, 588 U.S. 180, 184 (2019)

61. "[A] property owner has a claim for a violation of the Takings Clause as soon as a government takes his property for public use without paying for it." *Id.* at 189.

62.    "[N]o matter what sort of procedures the government puts in place to remedy a taking, a property owner has a Fifth Amendment entitlement to compensation as soon as the government takes his property without paying for it." *Id.* at 190.

63.    Defendants took the Mocks Property for public use when they unlawfully entered onto a portion of the Mocks Property to use it as a security zone.

64.    Indeed, defendants have repeatedly claimed that their seizure of a portion of the Mock Property was necessary to provide for the security of Governor Shapiro and his family. Moreover, upon information and belief, Governor Shapiro has requested that the Commonwealth of Pennsylvania pay for the costs incurred in seizing a portion of the Mock Property, including payment of legal fees incurred in attempting to purchase and lease the property.

65.    Defendants took property from the Mocks and have refused to compensate them for it.

## COUNT IV
### Common Law Trespass

66.    Plaintiffs incorporate the previous paragraphs by reference.

67.    Defendants willfully entered onto the Mock Property without the Mocks' permission, without authority, and without a court order.

68.    This illegal and intentional conduct constitutes an illegal trespass onto the Plaintiff's property.

69.    Defendants' conduct was willful and reckless and without justification.

70.    Defendants' conduct in trespassing on the Plaintiff's property has caused the Mocks to suffer damages.

14

## DEMAND FOR RELIEF

Plaintiffs respectfully request that the court:

a.   enter a declaratory judgment that the defendants, Governor Shapiro and Lt. Col. Bivens, violated plaintiffs' rights under the Fourth, Fifth, and Fourteenth Amendment to the United States Constitution;

b.   enter a permanent injunction against the defendants, Governor Shapiro and Lt. Col. Bivens, prohibiting them, their representatives, or agents from continuing to occupy the Mock Property without permission;

c.   enter a permanent injunction against the defendants removing them from the Mock Property;

d.   award plaintiffs compensatory against Governor Shapiro in his individual capacity,

e.   award plaintiffs compensatory damages for common law trespass,

f.   award costs and attorneys' fees under 42 U.S.C. § 1988; and

g.   award all other relief that the Court deems just, proper, or equitable.

Respectfully submitted,

Dated:  April 27, 2026

/s/ Walter S. Zimolong III
WALTER S. ZIMOLONG III, ESQUIRE
wally@zimolonglaw.com
MEAGHAN R. WAGNER, ESQUIRE
meaghan@zimolonglaw.com
Zimolong, LLC
PO Box 552
Villanova, PA 19085-0552
Tele: 215-665-0842