IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JEREMY MOCK, et al.            :        CIVIL ACTION
                              :
        v.                    :
                              :
JOSHUA D. SHAPIRO, et al.     :        NO. 26-816

MEMORANDUM

Bartle, J.                                        July 7, 2026

        Plaintiffs, Jeremy Mock and his wife, Simone Mock have

sued: Joshua D. Shapiro, in his official capacity as Governor of

the Commonwealth of Pennsylvania and in his individual capacity;

Lori Shapiro, his wife; and Lieutenant Colonel George L. Bivens

in his official capacity as Acting Commissioner of the

Pennsylvania State Police.[1]  The Mocks and the Shapiros own

adjoining residential properties in Montgomery County.  The

Mocks claim that the Shapiros, with the help of the State

Police, have illegally seized a portion of their land.

        Plaintiffs, in their amended complaint, aver, pursuant

to 42 U.S.C. §§ 1983 and 1985,[2] that defendants have violated

---

[1]    The caption of the action originally included the
Commonwealth of Pennsylvania.  The parties have previously
stipulated to its dismissal (Doc. # 28).

[2]    The amended complaint makes a solitary reference to 42
U.S.C. § 1985.  There is no mention of § 1985 in the extensive
briefing on the motions to dismiss.  It does not appear to be
applicable here as there is no claim of conspiracy that alleges
racial or class-based discrimination. See Griffin v.
Breckenridge, 403 U.S. 88, 102-03 (1971); Farber v. City of
Patterson, 440 F.3d 131, 135 (3d Cir. 2006).  At oral argument,

their procedural due process rights under the Fourteenth Amendment, have unlawfully seized their property in violation of the Fourth Amendment, and have taken their property for public use without just compensation in violation of the Fifth Amendment.  The Mocks also plead a count for common law trespass under Pennsylvania law.  They seek a declaratory judgment, a permanent injunction, compensatory damages and costs and attorneys' fees.

This action was filed on February 9, 2026.  The Shapiros sued the Mocks later the same day in the Court of Common Pleas of Montgomery County to quiet title to the real estate in question.  The Shapiros claim that they have owned that land as a result of adverse possession since at least May 22, 2003.  Complaint at ¶¶ 12, 30, 34, 38, Shapiro v. Mock, No. 2026-02445 (Montgomery Cnty. Ct. Com. Pl. Feb. 9, 2026).

Before the court are the motions of the defendants to dismiss the amended complaint under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure and to decline to exercise supplemental jurisdiction if the federal claims are dismissed.  The Shapiros also move to stay this action pending resolution of the related quiet title action they have brought against the Mocks in the state court.

---

the plaintiffs conceded that they are not pursuing a claim under § 1985.  The amended complaint to this extent will be dismissed.

I

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides for the dismissal of claims if the court lacks subject matter jurisdiction.  In support of its Rule 12(b)(1) motion, defendants argue that plaintiffs lack standing.  Governor Shapiro in his official capacity and Acting State Police Commissioner Bivens in his official capacity also assert that the lawsuit against them is barred under the Eleventh Amendment because of sovereign immunity.  At this stage, defendants are making a facial attack on standing.  See Const. Party of Pa. v. Aichele, 757 F.3d 347, 357-58 (3d Cir. 2014).  An Eleventh Amendment challenge is also considered a facial attack.  See e.g., Urella v. Pennsylvania State Troopers Ass'n, 628 F. Supp. 2d 600, 604 (E.D. Pa. 2008).  Under these circumstances the court must accept as true the allegations in the complaint in ruling on the motion. See Gould Elecs. Inc. v. United States, 220 F.3d 169, 176 (3d Cir. 2000); Urella, 628 F. Supp at 604.

Rule 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if it fails to state a claim upon which relief can be granted.  When considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court must likewise accept as true all well-pleaded factual allegations in the complaint (and draw all reasonable inferences in the light most favorable to the plaintiff).  See Phillips v.

-3-

County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008); Umland v. PLANCO Fin. Servs., Inc., 542 F.3d 59, 64 (3d Cir. 2008).  When there is a document "integral to or explicitly relied upon in the complaint," it may also be considered as there is no concern of lack of notice to the plaintiff.  See Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014) (quoting In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997) (quotation marks omitted)).  The court may also take judicial notice of matters of public record.  See Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014) (quoting Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

## II

According to the amended complaint, Governor Shapiro, in early July 2025, contacted the Mocks about the installation of a security fence on their property, as recommended by the State Police, and with a question about the property line.  Lori Shapiro, the Governor's wife, also advised Jeremy Mock that the Shapiros needed to construct an eight-foot-high security fence on the Mocks' property near their common boundary and sought the Mocks' permission to do so.  Later in July, the attorney for the Shapiros informed the Mocks of the desire of the Shapiros to purchase the strip of the Mocks property where the fence would be located.  The Shapiros, however, would not agree to the

Mocks' asking price.  Thereafter, the parties discussed a lease but were unable to come to an agreement.

At that point, the Shapiros took a different tack. They now claimed they owned by adverse possession the strip of the Mocks' property in issue even though at various times previously the Shapiros had told the Abington Township Zoning Hearing Board that this portion of the property was owned by the Mocks.  According to the amended complaint, the Shapiros, in a state court lawsuit that they have brought against the Mocks to quiet title, have conceded that the strip of the property in issue "appears within the metes and bounds description of the Mock Deed and does not appear in the deed for the Shapiro Property."  The Mocks assert they have paid taxes on the property for over nine years.

The Shapiros have now directed their agents and representatives to plant arborvitae-type trees and other plants on the Mocks' property.  They have threatened to remove healthy trees.  They have had a drone fly over the land.  Further, the Governor has commanded the State Police to patrol the property. On numerous occasions, the State Police told the Mocks that the land in issue was disputed and was now a security zone which they may not enter without the permission of the Shapiros or the State Police.

-5-

III

Joshua D. Shapiro, in his official capacity as Governor of the Commonwealth of Pennsylvania and Lt. Colonel George Bivens, in his official capacity as Acting Commissioner of the Pennsylvania State Police, move to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction.  They rely on the Eleventh Amendment to the Constitution which provides: "The Judicial power of the United States shall not be construed to extend to any lawsuit or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  Despite its wording, the Supreme Court has construed the amendment to bar lawsuits in the federal court against a state by a citizen of that state.  Hans v. Louisiana, 134 U.S. 1, 9-10 (1890).  It is the general rule that a state, its agencies, and its officials in their official capacities, cannot be sued in a federal forum, absent consent, waiver or congressional intervention to remove the jurisdictional bar.  Virginia Off. for Prot. & Advoc. v. Stewart, 563 U.S. 247, 253-56 (2011).  There has been no consent to the present lawsuit and immunity has not been waived.  Nor has Congress acted to allow this action to proceed in federal court against these defendants.  Nonetheless, there is a long-standing exception that allows state officials in their official capacities to be sued for prospective injunctive and declaratory

-6-

relief.  Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 146 (1993); Ex Parte Young, 209 U.S. 123, 155-56 (1908).  The Supreme Court has characterized this exception as narrow.  Puerto Rico, 506 U.S. at 146.  The Court has emphasized that no jurisdiction exists to grant injunctive or declaratory relief for past violations of federal law.  Id.

The Mocks claim that in seizing their property Governor Shapiro and Lt. Col. Bivens in their official capacities have denied them procedural due process in violation of the Fourteenth Amendment, have acted unlawfully in seizing their property in violation of the Fourth Amendment, and have taken their property for public use without just compensation in violation of the Fifth Amendment.  All these claims are predicated on past conduct.  That past conduct is the already effected seizure of the Mocks' property and the failure to provide the Mocks with due process before the seizure.  Thus, the Mocks' claims are not ones for which prospective injunctive or declaratory relief is available.  See Hewitt v. Helms, 482 U.S. 755, 761-62 (1987); see also City of Los Angeles v. Lyons, 461 U.S. 95, 105-07 (1983)).

The Supreme Court in Knick v. Twp. of Scott, 588 U.S. 180 (2019), has also held that only monetary but not injunctive

relief may be obtained for a claim under the Takings Clause.[3] Id. at 205.  While plaintiffs may be entitled under the Fifth Amendment to compensation for the taking of their property for public use or to damages for their other claims (including the common law trespass claim), the Eleventh Amendment bars such suits in a federal forum against state officials in their official capacities.

The Mocks, as noted, simply are seeking redress for completed acts or omissions.  Their allegations do not fit the narrow circumstances for prospective injunctive or declaratory relief.  Accordingly, the motion of Governor Shapiro and Lt. Colonel Bivens in their official capacities to dismiss this action as to them will be granted for lack of subject matter jurisdiction.

IV

Governor Shapiro and his wife Lori Shapiro, sued in their individual capacities, first move to dismiss the amended complaint under Rule 12(b)(1) for lack of standing.  They assert that the Mocks have not established a "legally cognizable right in the disputed strip," that is that plaintiffs have no ownership interest in it.

---

[3]     This action involved a taking claim against a local government, which is not barred under the Eleventh Amendment. Knick, 588 U.S. at 185-87.

A challenge to standing is a challenge to the existence of a case or controversy under Article III of the Constitution.  Such a challenge is to the court's subject matter jurisdiction.  To establish standing, "a plaintiff must demonstrate: (i) that she has suffered or is likely to suffer an injury in fact, (ii) that the injury likely was caused or will be caused by the defendant, and (iii) that the injury likely would be redressed by the requested judicial relief."  <u>FDA v. All. for Hippocratic Med.</u>, 602 U.S. 367, 380 (2024).  An injury must be concrete, that is it must be real and not abstract.  <u>Id.</u> at 381.

At the motion-to-dismiss stage, the court must accept as true all well-pleaded facts for purposes of deciding standing.  It must decide the standing issue separate from a decision on the merits of the action.  <u>Cottrell v. Alcon Lab'ys</u>, 874 F.3d 154, 162 (3d Cir. 2017).  The Mocks plausibly allege that they have owned the property in question for a number of years and that the Shapiros have wrongfully seized and held that property.[4]  They have asserted a legally cognizable interest.

---

[4]    The Shapiros argue that the amended complaint is fatally deficient in that it simply alleges that the Mocks claim ownership of the disputed land but do not specifically allege they possessed it.  This argument is without merit.  As stated in <u>Black's Law Dictionary</u> (10th ed. 2014), "ownership implies the right to possess a thing, regardless of any actual or constructive control."  A court must "accept as true all allegations in the complaint and all reasonable inferences that

The Shapiros, in support of their challenge to standing, ask the court to ignore what the Mocks have pleaded and pivot to an argument that they own the property in dispute even though there are no facts of record at this time to support their position.  As noted, the merits at this stage have no place in the decision on this Rule 12(b)(1) motion.  Who owns the property will be decided in due course but not until discovery has been completed.  The motion of the Shapiros to dismiss for lack of standing will be denied.

V

Defendants, Joshua and Lori Shapiro, in their individual capacities next argue that the Mocks have not stated a viable claim for relief against them under § 1983.  They maintain there are no plausible allegations of state action against them.

> 42 U.S.C. Section 1983 provides in relevant part:
>
> Every person who, under color of any
> statute, ordinance, regulation, custom, or
> usage, of any State . . . subjects, or
> causes to be subjected, any citizen of the
> United States, or other person within the
> jurisdiction thereof to the deprivation of
> any rights, privileges, or immunities
> secured by the Constitution and laws, shall
> be liable to the party injured . . . .

can be drawn from them after construing them in the light most favorable to the nonmovant." Foglia v. Renal Ventures Mgmt., LLC, 754 F.3d 153, 154 n.1 (3d Cir. 2014) (quoting Jordan v. Fox Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994)).

-10-

In <u>Hafer v. Melo</u>, 502 U.S. 21 (1991), the Supreme Court held that state officials, sued in their personal capacities, may be held individually liable pursuant to § 1983 for acts taken under color of state law.  <u>Id.</u> at 31.  A state official sued in his or her personal or individual capacity unlike a state official sued in his or her official capacity is considered to be a "person" subject to liability under the statute.  <u>Id.</u>  Contrary to the Shapiros' view, the lawsuit here cannot properly be described as merely a private dispute between adjoining neighbors over the boundary line of their respective properties.  The Mocks allege that the Governor, with the aid of the State Police which he directs, seized their land in order to enhance his security as the Commonwealth's chief executive.[5] This is state action.

Lori Shapiro, to be sure, is not alleged to be a state official.  Nonetheless, a private person who acted in concert with a state official can be held liable under § 1983.  <u>Lugar v. Edmondson Oil Co., Ltd.</u>, 457 U.S. 922, 941 (1982); <u>Abbott v. Latshaw</u>, 164 F.3d 141, 147-48 (3d Cir. 1998).

---

[5]    Pursuant to the Pennsylvania Constitution, "the supreme executive power shall be vested in the Governor, who shall take care that the laws be faithfully executed."  Pa. Const. art. IV, § 2.

The Supreme Court in Lugar reversed the dismissal of a § 1983 complaint where it was alleged that the defendant, a private company, had attached prejudgment the property of the plaintiff through an ex parte petition under state law.  Lugar, 457 U.S. at 942.  The Court explained, "we have consistently held that a private party's joint participation with state officials in the seizure of disputed property is sufficient to characterize that party as a 'state actor' for purposes of the Fourteenth Amendment."  Id. at 841.

Likewise in Abbott, our Court of Appeals reversed the dismissal of a complaint brought under § 1983 by a plaintiff against his ex-wife.  Abbott, 164 F.3d at 148.  The ex-wife, who was not a public official, allegedly enlisted the aid of a constable to take possession of a van from the plaintiff without giving him the opportunity to show them his documentation of ownership or otherwise contest the seizure.  Id. at 144-45.

In the amended complaint the Mocks aver that the Governor and his wife jointly own their home in Abington Township and that the Governor and his wife both claim to own the contested strip of land.  The Mocks further set forth that Lori Shapiro told Jeremy Mock that the Shapiros (plural) needed to construct a high security fence on their property.  Lori Shapiro allegedly was otherwise aiding her husband in his efforts to obtain the property so as to provide him security in

-12-

his position as the Governor of the Commonwealth.  The amended complaint further states that she had participated with her husband in keeping the Mocks out of the property.

The Shapiros' state court complaint, of which this court may take judicial notice, confirms the Mocks' allegations of Lori Shapiro's active involvement.  The Shapiros (plural) plead joint title to the disputed land.  They further aver that "they would not permit [the Mocks], or anyone acting on their behalf, to access the Disputed Area."  Complaint at ¶ 22, Shapiro v. Mock, No. 2026-02445 (Montgomery Cnty. Ct. Com. Pl. Feb. 9, 2026) (emphasis added).

There are sufficient facts in the amended complaint, taken as true for present purposes, that Lori Shapiro has jointly participated and acted in concert with her husband in his capacity as Governor so as to constitute conduct on her part under color of state law.  The motion of the Shapiros to dismiss the amended complaint for failure to state a claim involving state action under § 1983 will be denied.

VI

Governor Shapiro further argues that he is entitled to qualified immunity with respect to the three claims against him under § 1983.  These three claims, as recited above, are captioned respectively: (1) Count I – Violation of the Fourteenth Amendment – Procedural Due Process; (2) Count II –

-13-

Violation of the Fourth Amendment – Unlawful Seizure of Property without Due Process; and (3) Count III – Violation of the Fifth Amendment – Taking of the Mock Property without Just Compensation.

The doctrine of qualified immunity protects public officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)) (internal quotation marks omitted). As noted in Saucier v. Katz, "this inquiry . . . must be undertaken in light of the specific context of the case, not as a broad general proposition . . . ." 533 U.S. 194, 201 (2001). The doctrine may be invoked not only by officials sued in their official capacities but also by those sued in their individual capacities. Hafer v. Melo, 502 U.S. 21, 29-31 (1991). Qualified immunity provides immunity from suit and is not merely a defense to liability. Hunter v. Bryant, 502 U.S. 224, 227 (1991) (internal quotations and citations omitted).

There is a two-step process in evaluating whether qualified immunity applies. At this early stage before discovery, one step involves the court's review of the amended complaint to determine if the Mocks have validly alleged a

-14-

violation of a constitutional right.  See Pearson v. Callahan,
555 U.S. 223, 232 (2009).  The other step requires the court to
decide if the valid constitutional right alleged is clearly
established.  Id.  The court has the flexibility as to the
sequence.  Id. at 236.  If there is no valid constitutional
right alleged, the issue of qualified immunity is moot.  If a
valid constitutional right is alleged but not clearly
established, the public official is protected from liability.
Id. at 232.  Only if a valid constitutional right is pleaded and
clearly established may the suit proceed against the public
official.  Id.  As noted, it is clearly established if it is a
right of which a reasonable person would have known.[6]

        The Mocks allege a violation of the Takings Clause of
the Fifth Amendment which states: ". . . nor shall private
property be taken for public use, without just compensation."
This wording is straightforward.  The Mocks' allegations fit
neatly within this provision.  They allege that the Governor
took possession of their private property for public use, that
is for a safety zone for his protection as the Chief Executive
of the Commonwealth and has done so without paying them for it.
The Supreme Court in Knick v. Twp. of Scott, 588 U.S. 180

---

[6]    In opposing qualified immunity for the Governor, the Mocks
point to the fact that he is a lawyer and previously served as
the Attorney General of Pennsylvania.

(2019), held that a property owner has a claim for relief under the Takings Clause as soon as a government takes the property for public use without payment.  Id. at 185.

What is pleaded here is in all material aspects the same as what was alleged in Knick.  The Governor attempts to distinguish Knick on the ground that the defendant there was a municipality and not a state official being sued in his individual capacity.  Both municipalities and state officials sued in their individual capacities are persons subject to liability under § 1983.  It would be an arbitrary reading of the word "person" in § 1983 to say that a municipality can be held liable but that a Governor in his individual capacity who does the same thing cannot.  See Hafer v. Melo, 502 U.S. 21, 29-31 (1991).  The Takings Clause has a plain meaning and is written in the passive voice.  No reasonable person could interpret it to be as restrictive as the Governor contends.  The Mocks' claim under the Takings Clause is clearly established.

The Mocks also bring a claim for violation of the Due Process Clause of the Fourteenth Amendment.  They assert that a public official seized their property without notice and an opportunity to be heard.  The Supreme Court has held that such a seizure, except in limited circumstances, is a due process violation.  Fuentes v. Shervin, 407 U.S. 67, 96-97 (1972); Abbott v. Latshaw, 164 F.3d 141, 146-47 (3d Cir. 1998).  There

-16-

is nothing in the amended complaint and the Governor has not argued that any of the limited circumstances exist here such as a seizure for a national war effort, to protect against economic disaster of a bank failure, to protect the public from misbranded drugs or contaminated food, or due to the necessity for prompt action. Fuentes, 407 at 90-93; Abbott, 164 F.3d at 147.  Nor is there anything of record that defendants posted a bond to alleviate the possible need for prior notice.  See Abbott, 164 F.3d at 146-47.  In light of Fuentes and Abbott, a reasonable person would have known that the allegations here, if proven, violate the procedural due process rights of the Mocks. Their due process claim is clearly established.

Finally, the Mocks assert that the seizure of their property violates the Fourth Amendment as incorporated into the Fourteenth Amendment.  The Fourth Amendment provides:

> The right of the people to be secure in
> their persons, houses, papers, and effects,
> against unreasonable searches and seizures,
> shall not be violated, and no Warrants shall
> issue, but upon probable cause, supported by
> Oath or affirmation, and particularly
> describing the place to be searched, and the
> persons or things to be seized.

The Supreme Court has held that the Fourth Amendment implicates more than privacy and liberty interests.  See Soldal v. Cook County, 506 U.S. 56, 62-64 (1992).  It protects possessory interests in property from unreasonable seizure even

-17-

where privacy and liberty interests are not at stake.  Id.  In that case, the Sheriff dispossessed the plaintiff of his rented trailer home prior to a judgment of eviction and also protected the owners' employees as they removed the trailer from the trailer park.  Id. at 58-59.  The Court held that the tenant had alleged a valid § 1983 claim under the Fourth Amendment against the Sheriff for his unreasonable seizure of the tenant's property.  Id. at 72.  The Mocks have alleged facts that a reasonable person would understand mirror the facts and claim in Soldal.  The Fourth Amendment claim is likewise clearly established.

The Mocks have plausibly pleaded against the Governor clearly established constitutional claims under the Fourth, Fifth and Fourteenth Amendments to the Constitution in the context of the facts alleged.  He is not entitled to qualified immunity.

VII

If their dismissal motions are unsuccessful, the Shapiros urge the court stay this action based on the Supreme Court decision in Colorado River Water Conservation Dist. v. United States, 424 U.S. 800 (1976).  They seek to have this court cease any activity until the state court resolves their quiet title lawsuit against the Mocks.

-18-

Colorado River involved the ever-present issue of water rights in the Southwest.  Id. at 804.  There, the Government had instituted suit in the District of Colorado against some 1000 water users for a declaratory judgment concerning its rights and those of Indian tribes under a Colorado statute.  Id. at 805.  At that point there were pending previously instituted state proceedings in which those issues were being litigated.  Id. at 804-05.

Colorado River makes clear at the outset that abstention from or the stay of the exercise of federal jurisdiction is "the exception, not the rule."  Id. at 813.  The court explained,

> The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it.  Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest.

Id. (quoting County of Allegheny v. Frank Mashuda Co., 360 U.S. 185, 188-89 (1959)).

The threshold question in any Colorado River analysis is whether the state and federal actions are parallel.  Ryan v. Johnson, 115 F.3d 193, 196 (3d Cir. 1997).  If not, the federal

court should not abstain or grant a stay.  Id.; Spring City Corp. v. American Bldgs. Co., 193 F.3d 165, 171 (3d Cir. 1999). If they are parallel, various additional factors enumerated by the Supreme Court must then be taken into account before a federal court defers to the state court.

In order for actions to be parallel, "there must be a substantial similarity in issues and parties between contemporaneously pending proceedings."  Kelly v. Maxum Specialty Ins. Group, 868 F.3d 274, 284 (3d Cir. 2017); see also Ryan v. Johnson, 115 F.3d 193, 196 (3d Cir. 1997).  The parties here are the same now that Governor Shapiro in his official capacity and Lt. Col. Bivens of the Pennsylvania State Police are being dismissed.  Nonetheless, the claims are not substantially similar.  The federal action includes constitutional claims brought under 42 U.S.C. § 1983.  The state court action simply raises a state law claim in equity to quiet title to a parcel of real estate.  While the issue of ownership is encompassed within both actions, the claims here extend far beyond a disagreement between neighbors over the metes and boundaries of their properties.

Assuming, however, that the actions are parallel, the court proceeds to review the six factors outlined by the Supreme Court to determine in the interest of wise judicial

administration whether extraordinary circumstances for abstention exist:

> (1) [in an *in rem* case,] which court first assumed jurisdiction over [the] property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained; (5) whether federal or state law controls; and (6) whether the state court will adequately protect the interests of the parties.

Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc., 571 F.3d 299, 308 (3d Cir. 2017) (internal quotations and citations omitted); see Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 15-16 (1983) (internal quotations and citations omitted).

This action involves in part the question of title to land.  Even if it is an in rem or quasi in rem case under Pennsylvania law, the first filed action was in this court, not the state court.  See Peet v. Bd. of Supervisors of New Hanover Twp., Civ. A. No. 21-2696, 2021 WL 5040358, at *6 (E.D. Pa. Oct. 29, 2021).  This factor does not favor the Shapiros.

Nor is the federal forum inconvenient.  The state action is pending in Norristown, the county seat of Montgomery County.  The federal action is pending in Philadelphia at the United States Courthouse at 601 Market Street.  The two courthouses are but 19 miles apart.  This markedly contrasts with the situation in Colorado River where the federal and state

-21-

proceedings were separated by 300 miles.  This factor favors the Mocks.

Both the federal and state lawsuits require resolution of the ownership of the disputed property.  The desirability of avoiding piecemeal litigation is an important factor, but only where a strong federal policy exists against separate lawsuits. Moses H. Cone Memorial Hosp., 460 U.S. at 16; Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, 571 F.3d 299, 308-09 (3d Cir. 2009); Spring City Corp., 193 F.3d at 172-73.  In Colorado River, the Supreme Court ruled in favor of abstention based in large part on the fact that the McCarron Amendment expressed a strong federal policy against piecemeal litigation in matters involving federal water rights.  424 U.S. at 819.  No such federal policy exists for claims contesting entitlement to private property.  In the circumstances presented here, both actions are to proceed until one comes to judgment.  Spring City Corp., 193 F.3d at 172 (quoting Univ. of Maryland v. Peat Marwick Main & Co., 923 F.2d 265, 275-76 (3d Cir. 1991)).

The court turns into the fourth factor.  While there was a race to the two courthouses, this action was filed shortly before the state court action. The Supreme Court has deemed priority in time significant only insofar as it measures the progress of the two actions.  Moses H. Cone Memorial Hosp., 460

-22-

U.S. at 21.  Both cases are in their early stages.  This factor is neutral.

Under the fifth factor, the court must determine whether federal or state law controls.  Pennsylvania law governs the ownership of the property in question.  The constitutional issues are federal in nature.  This factor disfavors a stay.

Finally, there is no doubt that the Court of Common Pleas of Montgomery County would protect the parties and fairly adjudicate ownership - the only claim before it.  This factor favors a stay.

The Supreme Court in Colorado River ruled in favor of abstention under factors and circumstances quite different and more compelling than those now before the court.  The two actions involving the Mocks and the Shapiros are not parallel, and even if they were, the factors to be considered are either neutral or in the aggregate weigh heavily against a stay. Recognizing "the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them," a stay under the Colorado River doctrine is not warranted.  Colorado River, 424 U.S. at 817; see also Moses H. Cone Memorial Hosp., 460 U.S. at 16.

VIII

The defendants, in the alternative, request a stay under Railroad Comm'n of Texas v. Pullman Co., 312 U.S. 496

-23-

(1941).  There, the Pullman Company sought to enjoin a Texas Railroad Commission order that required all trains including those with only one sleeping car to have a Pullman conductor. Id. at 497-98.  Up to that point, The Pullman Company only had conductors on trains with more than one sleeping car.  Id. at 497.  On those with one sleeping car, a Pullman porter was in charge.  Id.  The conductors were white and the porters were black.  Id.  The Pullman Company maintained that the order not only violated Texas law but also the Due Process and Commerce Clauses of the Federal Constitution.  Id. at 498.  The porters, who were intervenors, asserted that the order discriminated against them on the basis of race in violation of the Fourteenth Amendment.  Id.

The Supreme Court explained that it faced a "more than substantial" federal constitutional question "touch[ing] a sensitive area of social policy."  Id.  The question could well be avoided, the Court stated, if the construction of state law as to the legality of the Railroad Commission Order was first decided by the Texas state courts.  Id. at 501.  The Court remanded to the three-judge court below to hold the matter in abeyance pending the bringing of a state proceeding with reasonable promptness to determine the state law issue.  Id. at 501-02.

-24-

The Supreme Court, in Belotti v. Baird, 428 U.S. 132 (1976), reiterated that Pullman abstention "is appropriate where an unconstrued state statute is susceptible of a construction by the state judiciary which might avoid in whole or in part the necessity for constitutional adjudication, or at least materially change the nature of the problem." Id. at 146-47 (internal citations and quotation marks omitted).

Our Court of Appeals has cautioned that Pullman abstention should be "rarely invoked." Planned Parenthood of Central New Jersey v. Farmer, 220 F.3d 127, 149 (3d Cir. 2000). The court explained that "three exceptional circumstances must be met before Pullman abstention applies." Id. There must be: (1) "uncertain issues of state law" underlying the federal constitutional claim; the state law issues must be amenable to state court interpretation which could "obviate the need to adjudicate or substantially narrow the scope of the federal constitutional claim"; and (3) "an erroneous construction of state law by the federal court would disrupt important state policies." Id. at 149-50 (internal quotations and citations omitted).

The pending action, unlike Pullman, does not involve a substantial and heretofore undecided constitutional question. Nor do the Shapiros maintain that the interpretation of a state statute or state property law relating to adverse possession or

-25-

quieting title is uncertain, unsettled, or unconstrued.  Rather, the focus here is on the underlying facts.  Reliance on the Pullman doctrine fails.

IX

The Shapiros, if not successful under Colorado River or Pullman, seek a stay pursuant to Landis v. Norther American Co., 299 U.S. 248 (1936).  In that case, the Government sought to compel various corporations to register under Public Utility Holding Company Act of 1935.  Id. at 250.  The Government asked the Supreme Court to stay actions brought by other corporations in various federal courts challenging the constitutionality of the Act until the Government's action was decided.  Id. at 250-51.  The Supreme Court remanded for further consideration as to whether the stays were appropriate.  Id. at 259.  The Supreme Court cautioned:

> . . . the suppliant for a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else.  Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both.

Landis, 299 U.S. at 255.

The Shapiros have not shown that rare circumstances exist for a stay under Landis.

-26-

X

For the reasons stated above, the court will dismiss the Mocks' claim under § 1985 as well as their § 1983 claims against Governor Shapiro and Lt. Col. Bivens in their official capacities.  It will deny the Shapiros' motion to dismiss the remaining claims as well as their motion to stay.

As noted previously, the court must at this stage accept as true all of the Mocks' well-pleaded facts as to the remaining constitutional and state law claims.  Whether they will be able to prove their claims or whether the Governor and his wife have title to the disputed land as a result of adverse possession must await another day.